407 F.Supp. 1227 (1975)
William H. BLAKELY, Plaintiff,
v.
CHRYSLER CORPORATION, and United Automobile, Aerospace and Agricultural Implement Workers of America, Local 136, Defendants.
No. 74-812C(4).
United States District Court, E. D. Missouri, E. D.
December 31, 1975.
Louis Gilden and Doreen D. Dodson, St. Louis, Mo., for plaintiff.
Levin & Weinhaus, Thompson & Mitchell, St. Louis, Mo., for defendants.

OPINION
NANGLE, District Judge.
Plaintiff William H. Blakely brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging that defendants, Chrysler Corporation and United Auto *1228 Workers Local 136, had discriminated against plaintiff on account of his religion.
This case was tried before the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

FINDINGS OF FACT
1. Plaintiff, William H. Blakely, is a resident of the State of Missouri and was during all times relevant herein a citizen of the United States.
2. Defendant Chrysler Corporation is a corporation organized and existing under the laws of the State of Delaware, qualified to do business in Missouri. Defendant Chrysler Corporation is engaged in industry affecting commerce which, at all times material to this action, employed more than twenty-five persons during each week of the calendar year and is an employer within the meaning of 42 U.S.C. § 2000e(b).
3. Defendant Local 136, United Automobile, Aerospace and Agricultural Implement Workers of America was a labor organization in an industry affecting commerce at all times material to this action, within the meaning of 42 U.S.C. § 2000e(d).
4. Plaintiff was an employee of defendant Chrysler Corporation from February 15, 1965 to July 7, 1972 and worked in Department 9150, the Trim Department, at all times material herein. During this entire period, plaintiff was a member of defendant Local 136. Local 136 is the certified collective bargaining representative of production and maintenance employees at defendant Chrysler's St. Louis Car Assembly Plant.
5. In February, 1971, plaintiff was baptized as a member of the Worldwide Church of God. This Church observes the weekly Sabbath between sundown Friday and sundown Saturday. In addition, the Church observes various Holy Days throughout the year which commence at sundown on the day prior to the date of the Holy Day and continue until the following sundown. During this period, no work may be performed. Since his baptism, plaintiff has not worked on any of his Sabbaths or Holy Days. It is clear that the Worldwide Church of God is an established Church and that plaintiff held his beliefs sincerely.
6. The regular work schedule at Chrysler's plant was Monday through Friday for eight hours per day, and Saturday work, as overtime. Department 9150 had a quota system, where a certain number of employees could be excused from work on any day, including Saturday. Extra employees were available to replace the excused employees. The quota system was the result of negotiations between the two defendants herein.
7. Plaintiff did not work on August 10, 1971. On August 17, 1971, plaintiff received a written warning for his absence. Plaintiff had given as a reason for the absence that he had attended a Church meeting. Defendant Chrysler had stated, however, that the reason was not acceptable.
8. Plaintiff was absent from work on September 20, 1971, that being one of the Holy Days. As a result of the absence, plaintiff received a one-day disciplinary lay-off. Through intervention by defendant Local 136, however, defendant Chrysler agreed to waive the penalty.
9. Plaintiff received a one-day disciplinary lay-off because of an absence on September 29, 1971.
10. Plaintiff subsequently received a one-day disciplinary lay-off for an absence on Saturday, May 6, 1972. Defendant Local 136 filed a grievance concerning this matter which was appealed to an appeal board, the UAW-Chrysler Appeal Board, in Detroit. The International Union, who was responsible for the grievance at this stage of the grievance procedure, withdrew the appeal after plaintiff was discharged.
*1229 11. Plaintiff received a three-day disciplinary lay-off for an absence on Saturday, June 17, 1972. Although Local 136 succeeded in persuading defendant Chrysler to waive the penalty, plaintiff insisted on serving it.
12. On Saturday, June 24, 1972, plaintiff was absent from work. As a result, plaintiff received a five-day disciplinary lay-off. This lay-off was never assessed because plaintiff was discharged. Local 136 did not grieve the lay-off but instead instituted a grievance concerning the discharge itself.
13. Plaintiff had informed his foreman, Jack Stocker, that he would be absent on the dates involved because of his religious observances. Plaintiff had explained his religious beliefs and observances to both company and union personnel. Plaintiff was told by Bill Sanson, his general foreman, that if his religion interfered with his job, he should get another job.
14. Chrysler Corporation had a graduated disciplinary system concerning unexcused absences as follows: Two counselings; one verbal warning; one written warning; a one-day suspension; a three-day suspension; two five-day suspensions; and finally, discharge. As to other actions, however, immediate discharge may be imposed. Chrysler posts Rules of Good Conduct, which provide in relevant part as follows:
Chrsyler employees are expected to conduct themselves on Corporation time or premises in a manner that promotes the safety and welfare of employees, encourages congenial work habits, and protects personal and corporation property. Misconduct may result in disciplinary action ranging from reprimand to discharge. Some examples of misconduct, which are not all inclusive, are listed below . . .
6. Failure or refusal to follow the instructions of supervision . . .
20. Unauthorized use of Corporation records or confidential information of any kind . . .
15. The evidence establishes that the union, in national negotiations, had tried to change Rule 20, to no avail.
16. As the disciplinary lay-offs were imposed upon plaintiff, he was shown a copy of a supervisor's report concerning his absences. Following the May, 1972 lay-off, plaintiff had requested a copy of the report and had informed his foreman that his purpose was to show it to the federal government, presumably the Equal Employment Opportunity Commission with whom plaintiff had discussed the situation. Both his foreman and the superintendent, Mr. Burke, and his steward, William Lewis, told plaintiff that he could not have a copy. No one informed plaintiff that he could make a handwritten copy of the report.
17. On July 7, 1972, when plaintiff was given his five-day disciplinary layoff, he again requested a copy of the supervisor's report. The request was denied. Plaintiff then took the report from the supervisor. Plaintiff's foreman and his supervisor directed plaintiff to return the report but plaintiff refused. The union's chief steward and committeeman for the department were summoned and they tried unsuccessfully to get plaintiff to return the document. Plaintiff left the premises to make a copy and returned the report to the company within a short period of time on the same day. Plaintiff had indicated throughout that this was what he intended to do with the report. In his absence, the union committeeman commented that plaintiff was always causing problems with his religious beliefs.
18. Local 136, on its own initiative, filed a grievance protesting plaintiff's discharge. The union processed it through each of the first three steps of the grievance procedure. Defendant Chrysler denied the grievance at these stages. Local 136, in accordance with the grievance procedure, then appealed to the International Union who sent the grievance to the UAW-Chrysler Appeal Board in Detroit. Negotiations at this stage resulted in a settlement agreement *1230 that plaintiff would be reinstated with full seniority but without back pay. Plaintiff, believing that he was entitled to back pay and to have his record clear of the disciplinary lay-offs, rejected the settlement. Because of a problem with new addresses, plaintiff did not reject this settlement offer until May, 1974. There is no evidence from which to infer that had plaintiff accepted the offer he would be precluded from further pursuing his rights as to back pay.
19. The evidence is clear that plaintiff was discharged for violations of Rules 6 and 20. The Court finds, however, that the decision to discharge plaintiff for violation of these rules resulted solely from defendant Chrysler's feelings that plaintiff's religious beliefs caused it inconvenience.
20. The evidence establishes that Local 136 filed grievances on plaintiff's behalf and pursued them as far as possible. The grievances were dismissed as lacking merit only when they had reached the stage in the grievance procedure over which Local 136 had no control. Although there is evidence which indicates antagonism on the part of union personnel towards plaintiff's religious beliefs, the Court finds that this antagonism did not contribute to plaintiff's discharge, nor did it amount to a violation of the union's duty toward plaintiff.
21. The Court further finds that plaintiff would have earned a total of $17,179.60 from the date of discharge through May, 1974 when plaintiff rejected the offer of reinstatement. During that period, plaintiff earned $7,312.08, leaving a total of $9,867.52 in back pay lost. The Court finds that plaintiff could have accepted the offer of reinstatement, which would have mitigated his damages, without having lost the right to pursue his claims as to back pay.
22. Plaintiff's attorneys expended 141 hours in the preparation and presentation of plaintiff's case. The Court finds the reasonable value of such services to be $3,300.00.
23. Following his discharge, plaintiff filed a timely complaint with the Equal Employment Opportunity Commission and upon receipt of a Right to Sue letter, timely filed suit in this Court.

CONCLUSIONS OF LAW
This Court has jurisdiction over the subject matter and of the parties to this action in accordance with 42 U.S.C. § 2000e-5(f)(3).
The Court has found that plaintiff's discharge was the result of antagonism felt by defendant Chrysler Corporation towards plaintiff's religious beliefs. It is clear that Title VII has been violated by defendant Chrysler Corporation. 42 U.S.C. § 2000e-2.
Chrysler Corporation has failed to establish that an accommodation of plaintiff's religious beliefs would have constituted an undue hardship so as to relieve defendant of the duty of accommodation. Hardison v. Trans World Airlines, Inc., 527 F.2d 33 (8th Cir. 1975); Johnson v. United States Postal Service, 497 F.2d 128 (5th Cir. 1974). To the contrary, the evidence establishes that defendant made no effort whatsoever to accommodate plaintiff's religious practices. The evidence is also clear that such accommodation was entirely feasible since a quota system for absences existed, with extra personnel available as replacements. See United States v. City of Albuquerque, 10 F.E.P. 771, 780 (D.C.N.M.1975). There was no evidence whatsoever that plaintiff could not be replaced on the days involved without an undue hardship to defendant Chrysler Corporation.
Nor is there any evidence which would indicate that plaintiff refused to cooperate in attempting an accommodation. The duty is on the employer to accommodate the employee's religious observances. Claybaugh v. Pacific Northwest Bell Telephone Company, 355 F.Supp. 1 (D.C.Or.1973). "Before an employer can assert the defense of non-cooperation, it is incumbent upon it to establish the accommodation which it has tendered and with which the employee *1231 refused to cooperate." Hardison v. Trans World Airlines, Inc., supra, at 39 [emphasis added].
It is clear that a union may also be held liable for violations of Title VII. This liability arises if the union
purposely acts or refuses to act in a manner which prevents or obstructs a reasonable accommodation by the employer so as to cause the employer to discriminate. Hardison v. Trans World Airlines, Inc., supra, at 42 [emphasis added].
The evidence fails to establish that Local 136 violated this duty owed to plaintiff. The union promptly filed and properly pursued the grievances filed, as far as was possible. The union on its own filed a grievance concerning plaintiff's discharge. This grievance did not assert religious discrimination as a grounds for the grievance. The Court can not conclude, however, that this amounted to a breach of the duty the union owed to plaintiff. Plaintiff did not ask union personnel to file this grievance on his behalf, nor did he tell them that he believed his discharge to be the result of religious discrimination. Under these circumstances, the union can not be held liable for failure to assert religious discrimination as a grounds for discharge. There is no evidence which shows that the union acted or refused to act so as to prevent or obstruct an accommodation by the employer. Therefore, there can be no liability.
Judgment will be entered in accordance with this opinion.

ORDER OF JUDGMENT
Pursuant to the opinion filed this date,
It is hereby ordered, adjudged and decreed that plaintiff shall have judgment against defendant Chrysler Corporation in the amount of $9,867.52 at defendant Chrysler Corporation's costs.
It is further ordered, adjudged and decreed that defendant Chrysler Corporation be and is enjoined from discriminating against plaintiff on account of his religious beliefs and observances.
It is further ordered, adjudged and decreed that defendant Chrysler Corporation be and is required to reinstate plaintiff to his former position with full seniority from his date of hire and that plaintiff's employment record be cleared of all disciplinary actions relating to his absences for religious reasons.
It is further ordered, adjudged and decreed that defendant Chrysler Corporation pay plaintiff's attorney fees in the amount of $3,300.00.
It is further ordered, adjudged and decreed that defendant United Automobile, Aerospace and Agricultural Implement Workers of America, Local 136 shall have judgment against plaintiff.