**CHRYSLER CORPORATION, Appellant,**

v.

**Curtis L. MANN, Trustee in Bankruptcy of William H. Blakely, Appellee.**

**No. 76–1196.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1977.

Decided Sept. 14, 1977.

Charles A. Newman, St. Louis, Mo., for appellant; Edwin D. Akers, Jr., Donald J. Stohr, St. Louis, Mo., and A. William Rolf, Chrysler Corp., Gen. Atty., Detroit, Mich., on the brief.

Louis Gilden, St. Louis, Mo., for appellee.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and HANSON, District Judge.[*]

GIBSON, Chief Judge.

Defendant Chrysler Corporation appeals from a judgment of the District Court in favor of plaintiff William Blakely.[1] Plaintiff's suit charging religious discrimination was brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1970), *as amended,* (Supp. V 1975), against Chrysler, his former employer, and against Local 136 of the UAW, his union. After a trial to the court, judgment was entered in favor of plaintiff and against defendant Chrysler, and in favor of the defendant Union.

Plaintiff Blakely was employed in the Trim Department at Chrysler's St. Louis Car Assembly Plant from February 15, 1965, until July 10, 1972. Blakely was baptized as a member of the World Wide Church of God in February 1971. The World Wide Church of God proscribes work by its members on the Sabbath or on holy days. The weekly World Wide Church of God Sabbath occurs between sundown Friday and sundown Saturday; each holy day commences at sundown on the day prior to the holy day and continues until the following sundown.

During Blakely's tenure at Chrysler, employees worked eight hours per day, Monday through Friday. Overtime work on Saturdays was scheduled from time to time. As a result of negotiations between Chrysler and the Union, the Trim Department had a quota system, whereby a certain number of employees could be excused from work on any day, including Saturday, and replaced by extra employees. The collective bargaining agreement between Chrysler and the Union also contained a provision permitting each employee a maximum of five paid absences per year. No reason whatsoever had to be given by an employee for these absences, which were deemed excused. Moreover, the collective bargaining agreement also provided for unpaid leaves of absence for good cause.

Between August 1971 and June 1972, Blakely had six unexcused absences from work which he stated were for religious

---

[*] The Honorable William C. Hanson, Chief Judge, United States District Court for the Southern District of Iowa, sitting by designation.

[1] The trial court's opinion is reported as *Blakely v. Chrysler Corp.,* 407 F.Supp. 1227 (E.D.Mo. 1975). Subsequent to the filing of this appeal, Blakely filed a petition in bankruptcy. By order of this court, Curtis L. Mann, Trustee in Bankruptcy for Blakely, was substituted as party appellee on May 3, 1976.

reasons.[2] Blakely chose not to use his paid excused absences for religious purposes. Nor did he request a leave of absence to excuse his religious observances. Chrysler's graduated disciplinary system for unexcused absences provided for initial warnings, followed by suspensions of varying lengths and, ultimately, discharge. In accordance with this system, Blakely served one one-day lay-off and one three-day lay-off.[3] During the three-day lay-off, which occurred in late June 1972, Blakely filed charges with the EEOC alleging that he had been subjected to religious discrimination by Chrysler and the Union.

On July 7, 1972, Blakely was informed that he was to be assessed a five-day disciplinary lay-off because of his sixth unexcused absence, but that he probably would not have to serve the lay-off. He was shown a supervisor's report concerning his absences. Apparently considering this report pertinent to the charges he had filed with the EEOC, he requested that he be given a copy. When this request was denied pursuant to long-standing Chrysler policy, Blakely took the report from his supervisor.[4] Despite the directives, requests and warnings of various representatives of Chrysler and the Union, including the warning that his failure to return the report would place his job in jeopardy, Blakely took the report from the premises.

He returned the report later on the same day after obtaining copies.

On July 10, 1972, Blakely was discharged for insubordination and unauthorized use of company records.[5] The Union, on its own initiative, filed a grievance protesting Blakely's discharge. The settlement agreement which ultimately ensued provided for Blakely's reinstatement with full seniority but without back pay. Blakely rejected this settlement offer. Following his discharge, he filed a complaint with the EEOC, and subsequently brought this suit against Chrysler and the Union, seeking reinstatement with full seniority, back pay and costs, including attorney fees.

The trial court held that Chrysler had violated Title VII by discharging Blakely because of its antagonism toward his religious beliefs and by failing to establish that an accommodation of his religious beliefs would have constituted an undue hardship. Chrysler was ordered to reinstate Blakely and to pay him $9,867.52 in back wages and $3,300.00 for attorney fees. The Union was absolved of liability by the trial court's holding that it had not violated any duty owed Blakely and had not acted so as to obstruct an accommodation by Chrysler.

42 U.S.C. § 2000e–2(a)(1) makes it an unlawful employment practice for an employer to discriminate against an employee on the basis of religion. A 1972 amendment to Title VII defines religion:

2. Four absences entailed observance of the Sabbath or holy days; two absences involved church meetings. The record is clear that Blakely told Chrysler that his absence on August 10, 1971, was occasioned by his attendance of a church meeting. There is, however, no evidence showing that August 10, 1971, was a holy day observed by the World Wide Church of God or that a church meeting was held on that date.

3. He had been assessed three one-day lay-offs, but Chrysler had waived the penalty on the first two. Chrysler had also agreed to waive the three-day lay-off, but Blakely had insisted on serving it.

4. The record indicates that the July 7 incident was not Blakely's first conflict with Chrysler over its policy prohibiting employee retention of supervisory reports. In May 1972, he had attempted to obtain a copy of a supervisor's report concerning his absences and had been

apprised that, pursuant to company policy, the report was not available to him.

5. Chrysler's Rules of Good Conduct provide in relevant part:

Chrysler employees are expected to conduct themselves on Corporation time or premises in a manner that promotes the safety and welfare of employees, encourages congenial work habits, and protects personal and Corporation property. Misconduct may result in disciplinary action ranging from reprimand to discharge. Some examples of misconduct, which are not all inclusive, are listed below

.  .  .

6. Failure or refusal to follow the instructions of supervision  .  .  .
20. Unauthorized use of Corporation records or confidential information of any kind

·  ·  ·

The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j).

A mutuality of obligation inheres in the employer-employee relationship. Title VII does not supplant this mutuality, but, using it as a necessary background, simply adds detail to certain areas of the relationship which are to remain free of discrimination. 42 U.S.C. § 2000e(j) thus has little meaning if it is considered only at an abstract level apart from the complementary nature of the duties that employer and employee owe one another, for a successful accommodation will rarely be possible unless employer and employee make mutual efforts. A failure of cooperation by either party will clearly lessen the chances of achieving a reasonable accommodation.

■ 42 U.S.C. § 2000e(j) delimits an employer's ultimate duty of accommodation in terms of the imposition of an undue hardship on the conduct of its business. The statute does not explicitly address, however, the penultimate duties of the employee, inherent in his relationship to his employer, to attempt to accommodate his beliefs himself and to cooperate with attempts at reasonable accommodation by his employer. An employee cannot shirk his duties to try to accommodate himself or to cooperate with his employer in reaching an accommodation by a mere recalcitrant citation of religious precepts. Nor can he thereby shift all responsibility for accommodation to his employer. Where an employee refuses to attempt to accommodate his own beliefs or to cooperate with his employer's attempt to reach a reasonable accommodation, he may render an accommodation impossible. In such a case, the employee himself is responsible for any failure of accommodation and his employer should not be held liable for such failure.

■ In discussing the extent of the employer's required accommodation to an employee's religious beliefs, the Supreme Court in *Trans World Airlines, Inc., v. Hardison,* —— U.S. ——, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), held that an employer was not required to carve out a special exception to its seniority provisions in order to help the employee "meet his religious obligations." *Trans World Airlines, Inc. v. Hardison, supra* at ——, 97 S.Ct. at 2276. The Court ascertained that the paramount concern of Congress in enacting Title VII "was the elimination of discrimination in employment" and it would not, therefore, "readily construe the statute to require an employer to discriminate against some employees in order to enable others to observe their Sabbath." *Trans World Airlines, Inc. v. Hardison, supra* at ——, 97 S.Ct. at 2277. Nor do we think that an employer should have to adjust its entire work schedule to accommodate individual religious preferences and practices, particularly where procedures and scheduling already provide a measure of elasticity in switching work shifts and in allowing excused absences.

■ The present case illustrates the impasse which can result from an employee's failure to try to accommodate his own religious beliefs or to cooperate with the accommodation efforts of his employer. A review of the record shows that Blakely did little to acquaint Chrysler with his religion and its potential impact upon his ability to perform his job. He apparently considered his behavior itself, which consisted of missing work on the Sabbath and holy days and informing Chrysler that his absences were compelled by his religion, sufficient to explain his religious needs to Chrysler. Otherwise, his only serious attempt to apprise Chrysler of his religion occurred some fifteen months subsequent to his baptism into the World Wide Church of God and following a number of absences occasioned by his religion, when he presented a card listing "God's Holy Days" to his superintendent and foreman. Blakely thus, somewhat paradoxically, displayed an active interest in observing the practices of his religion and a disinterest in explaining his religious needs

to Chrysler. This ambivalent attitude placed Chrysler in an awkward position, which was exacerbated by Blakely's disinclination to utilize the provisions of the collective bargaining agreement pertaining to excused absences or to consider any sort of a compromise insofar as his religion was concerned. Blakely took the position that he should not be paid for observing his religion and, therefore, refused to use his paid excused absences for religious purposes. He did not attempt to use the leave of absence procedure of the collective bargaining agreement to cover his religious absences. Moreover, when Chrysler took the cooperative step of waiving punishments assessed against Blakely because of his continuing absences, Blakely insisted on serving the punishments. Finally, after his discharge, Blakely refused Chrysler's offer of reinstatement with full seniority.

Blakely rejected the means provided by the collective bargaining agreement for obtaining excused absences and refused Chrysler's clemency insofar as punishment and discharge were concerned. He apparently felt that the special dictates of his religion could not be appropriately met by nonreligious methods used to cover absences in general and that extraordinary means of accommodation were necessary. 42 U.S.C. § 2000e(j) does not contain such a requirement, however. It simply provides that an employer must attempt a reasonable accommodation of an employee's religious beliefs. Where, as here, an employee is disinterested in informing his employer of his religious needs and will not attempt to accommodate his own beliefs through the means already available to him or cooperate with his employer in its conciliatory efforts, he may forego the right to have his beliefs accommodated by his employer. *Cf. United States v. City of Albuquerque,* 545 F.2d 110, 113–14 (10th Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 2974, 53 L.Ed.2d 1092 (1977). Under the circumstances we are constrained to disagree with the District Court's conclusion that Chrysler violated Ti-

tle VII by failing to accommodate Blakely's religious beliefs or to justify this failure.

With regard to Blakely's discharge, the trial court made the following findings of fact:

> The evidence is clear that plaintiff was discharged for violations of Rules 6 and 20. The Court finds, however, that the decision to discharge plaintiff for violation of these rules resulted solely from defendant Chrysler's feelings that plaintiff's religious beliefs caused it inconvenience.

*Blakely v. Chrysler Corp.,* 407 F.Supp. 1227, 1230 (E.D.Mo.1975). We agree that there is clear evidence that Blakely was discharged for violating Rules 6 and 20. We are unable to find support, however, for the District Court's ancillary and contradictory finding that the discharge was actually a result of antagonism to Blakely's beliefs. Indeed, after a careful review of the record, we are left with the definite and firm conviction that this finding is clearly erroneous and that a mistake has been made. *St. Louis Typographical Union No. 8 v. Herald Co.,* 402 F.2d 553 (8th Cir. 1968). Chrysler's treatment of Blakely was consistently conciliatory. It was Blakely who flouted company policy, eschewed readily available means of accommodation and maintained an intransigent position. His discharge stemmed from his knowing violation of company rules pertaining to company property. That Blakely's religion somehow made him feel justified in violating a rule on corporate property simply does not suffice to imbue Chrysler's action in discharging him with a religious animus. Blakely's discharge was caused by his violation of company rules of conduct. It was not the result of antagonism by Chrysler to his religious beliefs and did not violate Title VII.[6]

We note that Blakely is currently employed by Chrysler once again. Chrysler is no longer ignorant of the tenets of Blake-

---

**6.** Chrysler raises several additional contentions in its brief, including a challenge to the constitutionality of 42 U.S.C. § 2000e(j). Our dispo-

sition of this appeal renders a discussion of these additional contentions unnecessary.

ly's religion; nor is Blakely unaware of the mutuality inherent in the employment relationship and integral to the attainment of a reasonable accommodation. We trust that both parties have profited from their past experience together and that they will enjoy a long and amicable working relationship.

The judgment of the District Court against Chrysler Corporation is reversed.