453 F.Supp. 582 (1978)
Donald WREN, Plaintiff,
v.
T.I.M.E.-D.C., INC., Defendant.
No. 77-1193C(2).
United States District Court, E. D. Missouri, E. D.
June 30, 1978.
Michael J. Hoare, Chackes & Hoare, St. Louis, Mo., Michael A. Wolff of the American Civil Liberties Union of America, St. Louis, Mo., for plaintiff.
Michael Miller and Robert H. Cowan, Gracey, Maddin, Cowan & Bird, Nashville, Tenn., Charles E. Valier, Lashly, Caruthers, Thies, Rava & Hamel, St. Louis, Mo., for defendant.

MEMORANDUM
WANGELIN, District Judge.
This suit alleges employment discrimination on the basis of religion. The Court has jurisdiction pursuant to § 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. Plaintiff has satisfied all the procedural prerequisites to suit under Title VII. Evidence was presented in this non-jury case both on plaintiff's request for a preliminary injunction and on the issue of liability. The following discussion is based upon careful review of the record and the testimony of the credible witnesses and constitutes the Court's findings of fact and conclusions of law.
Defendant is an interstate trucking company that operates three hundred and sixty five (365) days a year. It is an "employer" within the meaning of Title VII. Defendant employs approximately sixty (60) over-the-road truck drivers in St. Louis.
*583 Defendant operates under a contract with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 600. The contract requires that defendant honor employees' seniority in various ways. Many of defendant's over-the-road drivers work regular "runs". These runs provide the drivers with a certain number of hours per week and their departure time is fairly constant. Thus, there is some security in driving a regular route. Drivers may bid for runs every six (6) months according to their seniority.
Other over-the-road drivers are placed on the "extra board". Extra board drivers haul freight as it becomes available. They are required to be available for dispatch twice daily. When called they are required to "protect their shift" by driving the trip.
If all the extra board drivers are either assigned or have excused absences, defendant then checks with off-duty regular drivers. Also available are laid off city drivers and casual employees. If either city drivers or casual employees are utilized defendant is required to make additional contributions to insurance and pension funds according to the contract with Local 600. Finally, defendant has certain time problems. If the dispatcher cannot find a driver within a certain time period a run may have to be cancelled.
For several years preceding 1977 defendant experienced financial difficulties. In order to increase efficiency defendant reduced the number of drivers. Because certain benefits are fixed (e. g., pension and health insurance) it is less expensive to work one driver seventy (70) hours in an eight (8) day period than to work two (2) drivers thirty five (35) hours each during that same time.
Plaintiff is a forty four (44) year old over-the-road driver. He had thirteen (13) years seniority with defendant and was twenty four (24) of fifty nine (59) drivers on the seniority list. He is, of course, a member of Local 600.
In 1972 he joined the Worldwide Church of God. Members of that Church observe the Sabbath from sundown Friday to sundown Saturday. Their religious beliefs require that they refrain from working during that time. There is no question that plaintiff sincerely holds these beliefs.
In April of 1973 plaintiff went to defendant's terminal manager and explained his beliefs. An agreement was reached that allowed plaintiff to avoid work on most Sabbath and Holy Days. Plaintiff initially did not have sufficient seniority to get a regular run that did not conflict with the Sabbath. Thus he remained on the extra board. He was usually not called on Friday nights or Saturdays. When the extra board was exhausted, including less senior drivers, plaintiff was called. This same arrangement was available to other extra board drivers who wanted an occasional day off. Including runs which terminated within several hours after sundown Friday and those which began within several hours before sundown Saturday plaintiff worked on a Sabbath or Holy Day at least once every five (5) weeks from 1973 to 1977.
In the Summer of 1977 plaintiff began to have problems with defendant. Plaintiff insisted that he would work on the Sabbath only in an emergency. He defined an emergency as when less senior extra drivers, off duty regular drivers, laid off city drivers, and casual drivers were all unavailable. Defendant insisted that plaintiff drive when the extra board was exhausted.
After June, 1977 plaintiff began calling in sick on Friday nights. He also scheduled doctors' appointments and other necessary visits on Saturdays. He let his Department of Transportation Health Certificate[1] lapse so he could "remember" it if called to work on a Sabbath.
These tactics were calculated to give plaintiff an additional excuse for not working on the Sabbath if the extra board was exhausted.
Plaintiff was fired twice between June and November of 1977. Both times he was *584 reinstated and agreed to work under the conditions required by defendant  viz., that he protect his shift if the extra board was exhausted. He also received several warning letters during that same time. The Court denied a preliminary injunction on November 17, 1977. In early December plaintiff was again fired for failing to accept a dispatch offered after the extra board had been exhausted.
There is no question that the disputes between the parties are a result of plaintiff's attempt to practice his religion. Title VII prohibits the discharge of an employee because of his or her religion. Section 701 of the Act provides that:
`Religion' includes all aspects of religious observance . . . unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observances or practices without undue hardship on the conduct of the employer's business.
42 U.S.C. § 2000e(j). TWA v. Hardison, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) recently interpreted this language. Hardison also involved a member of the Worldwide Church of God. In that case the court held that TWA had fulfilled its obligation to provide a reasonable accommodation to Hardison's religious beliefs. The issue here is whether defendant's treatment of plaintiff was lawful under the standards set out in Hardison. The Court concludes that it was.
It is true that defendant did not bend over backwards to accommodate plaintiff. However, it made efforts within the seniority system to aid him. Defendant is not required to go out of that system. TWA v. Hardison, 432 U.S. at 81, 97 S.Ct. 2264. Plaintiff even had one opportunity to bid on a regular run that did not conflict with his Sabbath. Although his failure to do so certainly does not preclude recovery, he does have an obligation to try to eliminate the conflict.[2]Cf. Chrysler Corp. v. Mann, 561 F.2d 1282 (8th Cir. 1977).
The procedure plaintiff suggests would involve calling off-duty regular over-the-road drivers, laid off city drivers and casual drivers. In addition to paying extra contributions if casual or city drivers were used (as discussed earlier) dispatchers would be required to go through a more complicated procedure merely to find the driver. If that procedure were to fail, as it might because the alternate drivers suggested by plaintiff are not paid to be "on call", defendant would be required to cancel a run. The expenses could further pyramid if deliveries or customers were lost. Such a system would require T.I.M.E.-D.C. to bear more than a de minimis cost. TWA v. Hardison, 432 U.S. at 84, 97 S.Ct. 2264. Under the standards described in Hardison, defendant has fulfilled its obligation to plaintiff and judgment will be entered accordingly.
NOTES
[1] Federal regulations require that defendant's drivers have current Department of Transportation Health Certificates. Both defendant and plaintiff would have been in violation of federal law had plaintiff driven without one.
[2] Plaintiff has challenged the admission of evidence showing the number of Sabbaths he worked from 1973 to 1977 because the parties stipulated to the sincerity of plaintiff's religious beliefs. The Court has considered that evidence, not on that issue, but both as it affects plaintiff's credibility and as it demonstrates plaintiff's unwillingness to cooperate with defendant in 1977.