929 F.2d 701
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Daniel C. RISELAY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 90-1779.
 United States Court of Appeals, Sixth Circuit.
 April 2, 1991.
 
 On Appeal from the United States District Court for the Eastern District of Michigan, No. 87-40203; Newblatt.
 E.D.Mich.
 AFFIRMED.
 Before BOYCE F. MARTIN, JR., and MILBURN, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Daniel C. Riselay appeals the judgment of the district court dismissing his religious discrimination action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. For the reasons that follow, we affirm.
 
 I.
 
 2
 Daniel C. Riselay was employed as a claims representative by the United States Department of Health and Human Services, Social Security Administration, for approximately fifteen years, and he worked in the Saginaw, Michigan district office from 1975 until his termination on July 10, 1985. The events leading to his termination are as follows.
 
 
 3
 Peter Ross, assistant district manager for the Saginaw office, testified that in late 1984 and early 1985, the Saginaw office experienced a problem with its employees' use of sick leave. Daniel Riselay was one of ten employees who was counseled regarding the use of sick leave. Although Riselay had been receiving 13 days of sick leave per year for approximately 15 years of employment, in February 1985, he had only 48 hours of sick leave as his balance. In a memorandum dated February 11, 1985, John Holmes, operations supervisor, informed Riselay that his use of sick leave was above average, and that some type of documentation may be required to support future sick leave usage.
 
 
 4
 Riselay was absent from work on April 25, part of April 26, and April 29-30, 1985.[1] Riselay testified that during this time he was suffering from severe internal pain in the area of his stomach and intestines. Riselay, an adherent of the Christian Science religion, attempted to treat the problem through prayer and study. When the pain did not subside, Riselay sought assistance from Francis X. Hayes, a Christian Science Practitioner who had treated him on previous occasions. Riselay testified that Christian Scientists do not ordinarily seek treatment from a medical physician, and according to Riselay, obtaining a medical diagnosis and receiving medical treatment is unacceptable in the Christian Science church. However, Riselay admitted that he had been treated by physicians on two occasions when he was unable to alleviate his pain with prayer and study.
 
 
 5
 On April 29, 1985, Riselay was placed on leave restrictions due to his use of sick leave. Under the leave restrictions, Riselay would be granted sick leave only when his absence was supported by a medical certificate, which was required to be submitted within two workdays after his return to duty.
 
 
 6
 On May 2, 1985, Riselay submitted two application for leave forms (Government Form SF-71). The first form requested sick leave for April 25, 1985, through 9:00 a.m. April 26, 1985. Riselay checked the box on the form indicating that he was undergoing medical, dental, or optical examination or treatment. Riselay wrote on the form that he was under professional care from April 25, 1985, through April 30, 1985, and the form was signed by Francis X. Hayes, C.S.[2] The second form requested sick leave from 10:30 a.m. on April 26, 1985, until April 30, 1985, and it was identical to the first form in all other respects.
 
 
 7
 On May 3, 1985, Riselay telephoned his supervisor, Peter Ross, and requested thirty days advance sick leave. Ross informed Riselay that his request would not be approved because he was on leave restrictions, and the union contract did not permit advance sick leave for employees on leave restrictions. Riselay testified that stress at work exacerbated his internal pain, and he requested extended leave to obtain Christian Science treatment. Riselay stopped going to work after Ross denied his request for advance leave.
 
 
 8
 On May 7, 1985, Ross sent a letter to Riselay regarding his leave status. Ross informed Riselay that the certificates submitted for his absences on April 25-30, 1985, and May 2-3, 1985, were not sufficient, and he needed to provide additional information before sick leave could be approved for those days. Ross stated in the letter that Riselay was to provide a medical certificate showing a diagnosis and how the condition prevented him from working. Ross further stated that if Riselay failed to provide the additional information by May 15, 1985, he would be placed on absence without leave. The May 7, 1985, letter also advised Riselay that because he had not reported to work since May 3, 1985, he must submit an acceptable request for leave by May 9, 1985, or he would be considered absent without leave.
 
 
 9
 Riselay responded by letter dated May 9, 1985, in which he accused Ross of refusing to honor his leave certificates simply because he had exercised his right to Christian Science treatment. Riselay explained that obtaining a medical diagnosis and treatment were incompatible with Christian Science treatment and practice. Therefore, he stated that he could not comply with the medical certificate requirements without being denied his right to Christian Science treatment.
 
 
 10
 In the letter, Riselay also asserted that the leave forms which he had already provided for his absences on April 25-30, 1985, and May 2-3, 1985, were sufficient and were all that he would provide. Riselay noted that the SF-71 form provided for signature by a physician or a practitioner. Riselay concluded his letter by stating that he would consider returning to work if he were transferred to work under another supervisor, the leave restrictions and performance improvement plan were withdrawn, and if he were left alone to do his work. Along with the letter, Riselay submitted an SF-71 form requesting official excused leave with pay from May 6, 1985, and continuing.
 
 
 11
 By letter dated May 10, 1985, Ross denied Riselay's request for official excused leave with pay and placed him on AWOL status until he submitted an appropriate request for either annual leave or leave without pay in lieu of sick leave. Ross explained that in order to have the leave approved, Riselay would have to submit "an acceptable third party statement" of the condition that prevents him from working. Ross warned that continuation of AWOL status could lead to disciplinary action up to and including removal.
 
 
 12
 On May 16, 1985, Ross sent another letter to Riselay informing him that he had been placed on AWOL status for the dates April 25-30, 1985, and May 2-3, 1985, because he failed to provide acceptable documentation for sick leave on those dates as requested by the May 7, 1985, letter. Ross again warned Riselay that AWOL status could lead to disciplinary action up to and including removal.
 
 
 13
 Riselay did not respond to the letters of May 10, 1985, and May 16, 1985, and he remained absent from work. By letter dated June 4, 1985, John Holmes notified Riselay that he proposed removing him from his position due to his continued unauthorized absence from work for over four weeks. Holmes referred to Ross' letters of May 7, 10, and 16, 1985, which instructed Riselay to submit a properly completed request for leave and medical justification for his absences, and Holmes noted that Riselay had not complied with these requests. Holmes informed Riselay that he could reply to the proposed removal, and that he would remain on active status during the notice period of the proposal.
 
 
 14
 By letter dated June 19, 1985, addressed to William T. Clynes, District Director of the Saginaw office, Riselay responded to Holmes' notice of proposed removal. Riselay complained of the manner in which he was being treated, claiming that it was discriminatory, illegal, and retaliatory. Riselay asserted that he was under the professional care of a Christian Science practitioner, and that his condition required that he not return to work until basic and humane work restrictions, including an immediate transfer to another supervisor, were accepted by the social security office management. Riselay stated in his letter that he would have been able to return to work on April 26, 1985, if his request for restrictions had been honored. Riselay asserted that he had provided properly completed leave forms signed by his treating practitioner which verified that he was under professional care and that it was not advisable for him to return to work. Riselay maintained that he was being discriminated against because of his Christian Science beliefs.
 
 
 15
 By letter dated July 8, 1985, Ross informed Riselay that he would be terminated from employment effective July 10, 1985. In his letter, Ross referred to the previous correspondence directing Riselay to submit properly completed leave forms and justification for his absences. Ross noted that Riselay responded by alleging that refusal to accept the certification from the Christian Science practitioner constituted religious discrimination and harassment. However, Ross explained that the request for additional information regarding the certification of the Christian Science practitioner was in compliance with the collective bargaining agreement and agency regulations. Ross stated: "The certification from the practitioner was not acceptable because it was incomplete, not because it was signed by a Christian Science Practitioner. The SF-71 did not provide information regarding why you were unable to work or an expected return to work date." J.A. at 406.
 
 
 16
 After filing charges with the Equal Employment Opportunity Commission (EEOC) and receiving a notice of right-to-sue letter, Riselay filed the present pro se action against the Secretary of Health and Human Services (the Secretary) on July 8, 1987, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., alleging that his termination from employment was based on religious discrimination and was in retaliation for previously filing a complaint with the EEOC. On August 28, 1989, the Secretary filed a motion for summary judgment. On January 19, 1990, the district judge adopted the magistrate's report and recommendation and granted the Secretary's motion for summary judgment as to Riselay's claim of retaliation for his EEOC activity, but denied the motion as to the religious discrimination claim.
 
 
 17
 The case was subsequently referred to a magistrate for trial as a special master in accordance with 42 U.S.C. Sec. 2000e-5(f)(5). The non-jury trial was conducted on April 23-24, 1990, following which the magistrate issued a report of his findings of fact and conclusions of law. The magistrate concluded that Riselay's termination from employment did not result from religious discrimination, but resulted from his failure to return to work or to explain his absence in an acceptable manner. The magistrate stated that although the initial demands for a medical certificate may have infringed upon Riselay's sincerely held religious beliefs, the Social Security Administration modified its demands in a reasonable manner so as to accommodate Riselay, but he refused to acknowledge or cooperate with this accommodation. Accordingly, the magistrate recommended that the district court enter judgment for the Secretary.
 
 
 18
 Riselay filed objections to the special master's report and a motion to modify and reject in part the report. The district judge accepted and adopted the factual findings and conclusions of the magistrate as supported by the record, and entered judgment for the Secretary on June 15, 1990. Riselay timely filed the present pro se appeal.
 
 
 19
 The principal issue on appeal is whether the district court clearly erred by finding that Riselay was not discharged in violation of Title VII.
 
 II.
 
 20
 Title VII makes it unlawful for an employer to discharge an employee because of the employee's religion. 42 U.S.C. Sec. 2000e-2(a)(1) (1982). In 1972, Congress amended Title VII to add the following definition of religion:
 
 
 21
 The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employees' ... religious observance or practice without undue hardship on the conduct of the employer's business.
 
 
 22
 42 U.S.C. Sec. 2000e(j) (1982). "The intent and effect of this ... was to make it an unlawful employment practice ... for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of [its] employees and prospective employees." Trans World Airlines v. Hardison, 432 U.S. 63, 74 (1977).
 
 
 23
 "The analysis of any religious accommodation case begins with the question of whether the employee has established a prima facie case of religious discrimination." Smith v. Pyro Mining Co., 827 F.2d 1081, 1085 (6th Cir.1987), cert. denied, 485 U.S. 989 (1988). An employee establishes a prima facie case by showing that: "(1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement." Id. In the present case, the district court determined that Riselay established a prima facie case of religious discrimination, and the Secretary does not challenge this determination.
 
 
 24
 Once a prima facie case is established, "the burden shifts to the employer to prove that it cannot reasonably accommodate the employee without incurring undue hardship." Smith, 827 F.2d at 1085. The reasonableness of an employer's attempt at accommodation must be determined on a case-by-case basis. Id.; American Postal Workers Union v. Postmaster Gen., 781 F.2d 772, 775 (9th Cir.1986).
 
 
 25
 The term "reasonable accommodation" is a relative term and cannot be given a hard and fast meaning. Each case involving such a determination necessarily depends upon its own facts and circumstances, and comes down to a determination of "reasonableness" under the unique circumstances of the individual employer-employee relationship. The trier of fact is in the best position to weigh these considerations.
 
 
 26
 Smith, 827 F.2d at 1085 (quoting Redmond v. GAF Corp., 574 F.2d 897, 902-03 (7th Cir.1978). Thus, the district court's determination on the issue of accommodation must be accepted unless it is clearly erroneous. Redmond, 574 F.2d at 903.
 
 
 27
 The district court found that the Social Security Administration attempted to accommodate Riselay's religious beliefs by the letter dated May 10, 1985, which dropped the request for a medical diagnosis, and instead asked for an acceptable third-party statement of the condition which prevented Riselay from working. The district court further found that Riselay refused to acknowledge or cooperate with this accommodation, and the court concluded that Riselay's lack of cooperation precluded granting relief under Title VII.
 
 
 28
 Riselay argues that the Social Security Administration did not attempt to accommodate his religious beliefs. Riselay maintains that the Social Security Administration consistently demanded that he provide a medical diagnosis before returning to work. Riselay contends that the Social Security Administration used his inability to provide a medical diagnosis as an excuse for placing him on AWOL status and for initiating the termination process.
 
 
 29
 Riselay asserts that the May 10, 1985, letter did not offer a meaningful and viable accommodation because it requested a statement of his condition which Riselay asserts would still be in basic and fundamental opposition to Christian Science treatment and practice. Riselay also contends that the Social Security Administration is attempting to bootstrap its argument by retroactively claiming that the May 10, 1985, letter represents an attempted accommodation. Riselay notes that the requirement of a statement of his condition appeared only in the May 10, 1985, letter, and was stated as a condition for obtaining either annual leave or leave without pay in lieu of sick leave.
 
 
 30
 Riselay also asserts that he did cooperate with his employer in attempting to reach an accommodation. Riselay states that he repeatedly explained the conflict with his religious beliefs, and that he even proposed certain accommodations, including having the Social Security Administration contact his treating practitioner directly, but the administration refused to respond. Riselay contends that he was not even allowed the accommodation provided by the leave of absence form SF-71, which does not require the inclusion of a medical diagnosis and authorizes signature by a physician or practitioner.
 
 
 31
 We reject Riselay's arguments. "Title VII requires reasonable accommodation. It does not require employers to accommodate the religious practices of an employee in exactly the way the employee would like to be accommodated." Pinsker v. Joint Dist. No. 28J, 735 F.2d 388, 390 (10th Cir.1984). "Although the burden is on the employer to accommodate the employee's religious needs, the employee must make some effort to cooperate with an employer's attempt at accommodation." Smith, 827 F.2d at 1085; see Brener v. Diagnostic Center Hospital, 671 F.2d 141, 145-46 (5th Cir.1982). Where an employee "will not attempt to accommodate his own beliefs through the means already available to him or cooperate with his employer in its conciliatory efforts, he may forego the right to have his beliefs accommodated by his employer." Chrysler Corp. v. Mann, 561 F.2d 1282, 1286 (8th Cir.1977), cert. denied, 434 U.S. 1039 (1978).
 
 
 32
 We hold that the district court's conclusion that the Social Security Administration attempted to accommodate Riselay's religious objections, but was impeded by Riselay's refusal to cooperate, is not clearly erroneous. Although the request for a medical diagnosis in the May 7, 1985, letter may have conflicted with Riselay's religious beliefs, in subsequent letters regarding Riselay's continued absence from work, the Social Security Administration did not request a medical diagnosis. Rather, in the May 10, 1985, letter the Social Security Administration sought from Riselay a third-party statement of the condition which prevented him from working.
 
 
 33
 Riselay did not respond to the May 10, 1985, letter, and he remained absent from work without leave from May 6, 1985, until his termination. Riselay's lack of cooperation impeded the Social Security Administration's attempts to accommodate his religious objections and resulted in his termination from employment. Riselay's lack of cooperation is evident in his letter of June 19, 1985, in which he repeats his claims of discrimination and states that he could have returned to work on April 26, 1985, if his request for "basic and professionally verifiable restrictions" had been honored.
 
 
 34
 "Where an employee refuses to attempt to accommodate his own beliefs or to cooperate with his employer's attempt to reach a reasonable accommodation, he may render an accommodation impossible." Smith, 827 F.2d at 1085 (quoting Mann, 561 F.2d at 1285). Because Riselay did not cooperate with his employer in its attempt to accommodate his religious beliefs, he rendered an accommodation impossible. Therefore, the district court correctly concluded that Riselay was not terminated in violation of Title VII.
 
 III.
 
 35
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Although not crucial to this appeal, it is noteworthy that in April 1985 Riselay was placed under a performance improvement plan because his work performance was deemed minimally satisfactory in two categories and unsatisfactory in one category
 
 
 [2]
 C.S. is the notation for a Christian Science practitioner