**SPRINGFIELD FIRE & MARINE INS. CO. et al. v. SIMMONS et al.**

No. 27846.   Dec. 13, 1938.

Rehearing Denied Jan. 17, 1939.

Rittenhouse, Webster & Rittenhouse, for plaintiffs in error.

O. H. Searcy, for defendant in error E. L. Newblock.

Henry R. Duncan, for defendant in error J. B. Simmons.

WELCH, J. This is an appeal from the district court of Osage county, Okla. John Canville was the owner of certain real estate in Osage county, whereon was located a dwelling house. He sold the property to J. B. Simmons, plaintiff herein, in February, 1934. About March 5, 1934, a fire destroyed this dwelling. In February, 1932, Springfield Fire & Marine Insurance Company, through its agent at Sand Springs, Okla., had written a policy of fire insurance on this building for $2,000. The loss under this policy is the basis of action No. 15809. February 20, 1934, after Simmons purchased this property, he procured from the same agent at Sand Springs a policy of fire insurance from Phoenix Assurance Company for $3,125, covering said dwelling, the household goods therein, and other properties not involved under this policy, and the loss under this policy is the basis of action No. 15810. At the same time and under the same circumstances, he procured a policy for $3,125, covering the same properties, from National Fire Insurance Company of Hartford, Conn., and the loss under this policy is the basis of action No. 15811.

These cases were consolidated for trial and appeal. The jury answered interrogatories in verdict form in favor of Simmons. The companies have appealed, and Simmons has cross-appealed.

The companies have presented many assignments, in some instances joining several under one head. In some instances the arguments of one company are not available to the others, and this necessitates an extended discussion of the propositions.

Springfield demurred to the evidence upon separate grounds, and contends that there was no proof of a valid transfer of the policy issued by them to Canville. After Simmons had purchased the property described in the policy, the following indorsement was attached to the policy:

"Notice is given and accepted that, by virtue of warranty deed the title to the property insured is vested in J. B. Simmons; and the purpose of this endorsement is to correct the name of the assured under this policy to read: 'J. B. Simmons' otherwise policy remains unchanged. Date of endorsement February 20, 1934.

"General Insurance Agency
"M. O. Ruppert, Agent."

The question is whether or not the local agent had such authority as to bind the company by the above notation.

The policy contains a provision that it should be void:

"* * * In case any change shall take place in title or interest or possession of the property herein named; * * * or if this policy shall be assigned without written consent hereon. * * *"

The policy further provides and is endorsed as follows:

"And it is hereby understood and agreed by and between this company and the assured that this policy is made and accepted in reference to the foregoing terms and conditions and that a breach of any of its conditions shall forfeit this entire policy as to all of the subjects of insurance named herein. No agent or employee of this Company or any other person or persons, except an officer or the Western Department Managers in writing shall have power or authority to waive or alter any of the terms or conditions of this policy.

"In Witness Whereof, The Springfield Fire and Marine Insurance Company of Springfield, Mass., has caused these presents to be signed by its President and attested by its Secretary in the City of Springfield, Mass., but the same shall not be binding until countersigned by the Managers of the Company in its Western Department Office at Chicago, Illinois, and also by a

duly authorized agent of the company, residing within the State, where the property is located.

"Geo. G. Bulkey
"President,

(Illegible)
"Secretary

"Countersigned at Chicago General Agency
(Date) February, 27, 1932.
"Harding (Illegible)
"Managers

"Countersigned at Sand Springs, State of Oklahoma.

"General Insurance Agency
"W. O. Ruppert, Agent."

In the case of Home Insurance Co. of New York v. Mobley et al., 57 Okla. 692, 157 P. 324, this court, in the syllabus, held:

"Where a policy of fire insurance entered into by a foreign corporation is not valid until countersigned by the local agent, such agent will be held to be the officer having power to issue the same in view of section 3434, Rev. Laws 1910 (10486, O. S. 1931) even though the policy contained a provision providing that it should 'not be valid until countersigned by the secretary or assistant secretary of the Western Farm Department at Chicago, Illinois'."

"Where an insurance company reinstates a policy which has been canceled, after knowledge of a breach of the policy prior to said reinstatement has been brought home to the local issuing agent, held, that the forfeiture is waived."

In the body of the opinion it was said:

"The policy contained these provisions:

" 'In witness whereof the Home Insurance Company of New York has caused these presents to be signed by its president and attested by its secretary in the city of New York, but this policy or any indorsement thereon or attached thereto of any kind shall not be valid until countersigned by the secretary or the assistant secretary of the Western Farm Department at Chicago, Illinois, who alone shall have power or authority to waive or alter any of the terms or conditions of this policy, or to make or attach indorsements hereon.'

"Then follow the signatures of the president and secretary, and a place for the signature of the secretary of the Western Farm Department, and then appears the following:

" 'This policy is valid only when countersigned by R. O. Dulaney, agent at Cornish, Oklahoma.'

"In Rochester German Ins. Co. v. Rodenhouse, 36 Okla. 378-383, 128 P. 508, this court held that a provision similar to the sentence last quoted of itself constituted the person designated an issuing agent. Counsel for plaintiff in error attempt to avoid the effect of the decision by calling attention to the provision above quoted in regard to the required countersignature of the secretary, and urge that the provision distinguishes the policy under consideration from that in the Rodenhouse Case, supra. In our view the countersignature of the secretary is but an additional requirement, leaving the final act of issuance and the final determination as to whether or not the policy shall issue and the delivery of the policy to the local agent. In the Rodenhouse Case the policy—an ordinary standard form—would not have been valid without the signatures of the president and secretary of the company, but it was the countersignature of the agent which was the final act necessary to its validity. So in the case at bar the company required the additional precaution of the countersignature of the secretary at Chicago, but the final act and the final discretion to be exercised was that of the local agent. We feel sure that if a fire had occurred in this case after the policy had been signed and forwarded by the secretary, but before it had been countersigned and delivered by the local agent, this company would be before us urging—and rightfully—that the policy had never become a completed contract. We hold, therefore, that the agent, Dulaney, was an 'issuing' agent of the company, and that the trial court was right in assuming such a status of the agent as a matter of law. We are strengthened in this view by the fact that under this testimony the contract was necessarily entered into and the policy issued either by the assistant secretary at Chicago, or by Dulaney. No one else apparently had anything to do with it. The assistant secretary was located in Chicago, Ill. Dulaney lived in Cornish, Okla. The defendant company is a foreign corporation. We should construe this contract, if possible, so as to make its terms and the conduct of the company comply with the laws of this state, which provide (section 3434, Rev. Laws 1910) [sec. 10486, O. S. 1931]:

" 'Foreign companies admitted to do business in this state shall make contracts of insurance upon lives, property, or interests herein, only through lawfully constituted and licensed resident agents. * * *

"In view of this we assume that the defendant company contracted through its resident agent, Dulaney."

The above-quoted provisions from the policy involved in the Mobley Case are similar in language and identical in meaning with provisions of the Springfield policy here involved, and in view of the determination in that case, and for the same reasons as stated therein, we assume that Springfield contracted through its resident agent, Ruppert.

This view is strengthened by the facts in the instant case. The record discloses that the policy was signed by the president and countersigned by the manager of the Chicago General Agency before the application for the policy was signed by Canville. The policy shows that it was countersigned at Chicago General Agency, February 27, 1932, and that the application for the insurance was signed at Sand Springs, Okla., on March 12, 1932.

It is apparent that the policy was in the hands of the resident agent at Sand Springs, signed and countersigned by the other officers of the company, at the time of the original application, and that the resident agent had authority to issue the policy and contract for the company.

The assignment of the policy to Simmons, the purchaser of the insured property, with the consent of the company, would in effect create a new contract between Springfield and Simmons, with the terms and conditions of the old contract imported into the new.

The policy provided that it would be void if assigned without the written consent of the company. With the endorsement of its consent upon the policy, the company thereby entered a new contract. It is apparent that any person authorized to make contracts of insurance for the company could consent to assignment.

The policy contains blank forms for assignment of interest by the assured and consent by the company to the assignment. It is apparent that these blank forms were placed in the policy as a matter of convenience for the parties. Immediately preceding these blank forms is found the following printed matter:

"Note: Agents are not authorized to consent to assignment of interest. Policy must be forwarded to Chicago office for approval of managers."

In consideration of the provisions of the policy hereinbefore discussed, it becomes apparent that the note is directed to soliciting agents, who are authorized to receive applications for insurance and to transmit them to the company for its approval, but who have no authority to pass on risks or to make contracts of insurance.

Ruppert, being an issuing agent, with authority to make contracts of insurance, endorsed the policy and consented to the assignment, and the policy must be sustained upon the authority of the Mobley Case, supra.

The other defendant companies demurred to Simmons' petitions and argue here that these should have been sustained (1) because of the lack of an allegation that the personal property was located in the described building where it was burned; and (2) the lack of an allegation relative to the value of the property lost.

We believe that what we said in Fire Ass'n of Philadelphia v. Correll, 157 Okla. 292, 10 P.2d 686, applies to these points. The petitions are identical, allowing for differences in defendants and policy descriptions. They are not models of pleading and were subject to being made more definite and certain in these respects. No effort was made by the companies to have these petitions made more definite and certain. However, taken as a whole, and indulging the inferences reasonably appearing from all of the allegations, including the one that Simmons had complied with all of the requirements on him, we think the general demurrer was properly overruled.

Proposition 2 relates to alleged errors in admitting and rejecting evidence.

There are at least eight or nine specific instances of the admission or rejection of evidence mentioned as errors on the part of the court. These relate to the admissibility of the deed Simmons received, the proof of loss which he furnished, the list of household effects he furnished, the competency of witnesses to testify regarding the value of items of personal property, and whether the fire was sufficiently destructive to destroy all parts of a mechanical refrigerator so that an inspection of the debris would disclose whether it was in the house at the time of the fire. Some of the points, such as the ones relating to the deed and the proof of loss and correspondence passing between the parties, are trivial. Others could not bring about a reversal because their effect was inconsequential even if they are correct in law.

These companies next urge that the demurrer to the evidence and the motion for a directed verdict should have been sustained as to them.

We have read the evidence of the plaintiff in its entirety, and we are convinced that he introduced sufficient evidence upon every issue to justify submitting the matter to the jury. The proof of loss which he furnished barely meets the minimum, but when the companies rejected it they thereafter declined to advise plaintiff in which respect they desired it amended. By the

terms of these policies plaintiff was required to furnish certain information within sixty days or such extension as they might allow, and was required to furnish other information if requested by the companies. Under these conditions we do not think the companies were justified in summarily rejecting the proof sent in and in maintaining silence thereon thereafter. Plaintiff thereafter co-operated with these companies under a nonwaiver agreement, and while all of the information they received may not have been satisfactory as to details, yet this does not give courts leave to destroy the protection purchased by this plaintiff.

These companies urge that the trial court erred in refusing to give their requested instructions 1, 2, and 3. Only No. 2 is set out and discussed, the others are waived.

There are provisions in the policies to the effect that if the insured falsely represents to the company any material matter relating to the value of or loss of the property, the policy shall be thereby voided. The instruction refused was to this effect. We doubt whether there was sufficient evidence to justify submitting the instruction. The finding of the jury as to the amount of the loss so nearly approached plaintiff's claim as to destroy the notion that plaintiff had falsely represented these matters.

The companies complain of the giving of instructions 1, 2, 3, 4, 5, and 6. Only 1, 2, and 4 are set out and discussed, and the others are waived.

The part of the instruction relating to the issues raised by the company's pleadings reads:

"The defendant has set forth in his answer various defenses, none of which have been sustained by the evidence, therefore, it is unnecessary for the court to advise you in any detail with reference to the allegations of said answer."

Several defenses were presented in these answers and amended answers but an examination of the record discloses a complete failure to introduce evidence relating to them, and especially to those defenses based upon violation of provisions of the policy justifying the forfeiture of Simmons' rights thereunder. It is clear that one of these defenses was that Simmons bought the property and increased the insurance and then fired, or caused to be fired, the house in order that he could collect the insurance. Much of their evidence was designed to elicit answers from Simmons and other witnesses to this effect. There was an utter failure in this respect.

The defenses relating to fraud and misrepresentation in procuring the policies and applying for the loss after the fire failed utterly for a lack of proof. Their own agent knew of the Springfield policy, he knew the property and solicited and wrote the policies issued by these companies.

Therefore the court was justified in giving instructions Nos. 2 and 4, reading:

"2. You are instructed that the undisputed evidence in this case discloses that the policies which are the basis of the claims of the plaintiff were regularly issued by the agents of the respective companies, and that said policies were in full force and effect upon the date of the alleged fire.

"Therefore, you are told that the plaintiff herein is entitled to recover a judgment at your hands against each of the defendants in accordance with the terms and conditions of said contracts of insurance."

"4. It will be your duty to find the actual cash value of the house which is alleged to have been destroyed, and return your answer accordingly.

"It will further be your duty to find the actual cash value of the furniture and contents therein contained at the time it is alleged to have been destroyed by fire.

"In this connection you are further told that you will not be concerned with reference to any deductions from the actual cash value of said property. Those deductions and apportionments will be made by the court upon your answers to the interrogatories which will be submitted to you."

The policies were in effect and should be applied to the full extent permitted by their provisions, to the payment of the value of the property destroyed. When the jury determined this value, the court could render judgment according to the provisions of this unambiguous contract.

The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and CORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur. RILEY, J., absent.