William F. BENTLEY, a/k/a Bill Bentley, Appellee,

v.

James O. HARDIN and Mildred I. Hardin, Appellants.

No. 50498.

Court of Appeals of Oklahoma, Division No. 1.

Jan. 3, 1978.

Rehearing Denied Jan. 31, 1978.

Certiorari Denied March 8, 1978.

Released for Publication by Order of Court of Appeals March 13, 1978.

Lampkin, Wolfe, McCaffrey & Norman by John W. Norman, Oklahoma City, for appellee.

Funston Flanagan, Walters, for appellants.

ROMANG, Judge:

The Appellant-Defendants (Defendants) appeal from a judgment on a jury verdict in favor of the Appellee-Plaintiff in an action to recover on a contract for a real estate broker's commission. As error the Appel-

lant alleges that (1) the facts fail to support the jury's verdict; (2) that the Court did not instruct on essential matters; and (3) that the Court failed to control the trial and permitted improper conduct by Appellee's counsel. The Appellee cross appeals for an attorney's fee.

## A. The Facts

The basic facts may be easily summarized. The Defendants and Plaintiff signed a written agreement giving the Plaintiff an exclusive right to sell 639 acres in the following form:

> "LISTING CONTRACT 1–28–76
> The undersigned do hereby agree to let Bill Bentley [the Plaintiff] have an Exclusive Right to Sell on the following Property—Sec. 23–35 11 W Containing 639 A, more or less, for a period of 30 days.
> It is agreed that the net Sales Price to the Sellers shall be $225,000 no less, Commission charge shall be 5%, and will be paid from that amount above the Sale price of $225,000 Net to Sellers—
> [Signatures omitted]
> Terminating Date
> Midnight, 2–27–76"

The Plaintiff proceeded to procure two offers, one which admittedly did not meet the Defendants' terms.

The area of dispute concerned alleged oral understandings dealing with the mineral rights to be sold and the exception for an alleged oral life tenancy granted earlier to one Ray Cameron and wife, the Defendants' grantors. The Defendants argued that there was an oral understanding (1) that they owned only part of the minerals and were reserving one-half of the minerals on the eastern 320 acres and (2) that they would only sell their rights subject to the oral life estate. The Plaintiff argued that the Defendant told him they wanted to

keep one-half the minerals they owned (i. e. ½ of ½ or ¼th) in the eastern 320 acres and that Ray Cameron would move off as soon as he was asked to and was seeking to buy a new home in Texas but that no life estate was mentioned. On this basis Plaintiff procured one buyer for the land reserving for 15 years one-half (½) of the minerals owned by the Defendants, or one-quarter (¼) of the minerals on the East one-half (½) of the property, but not subject to any life estate.

## B. The Jury's Verdict

 In this Court the Defendant seeks to argue the evidence produced below. To be sure, if the jury had believed Defendants' case it could have returned a Defendants' verdict. But our role on an issue of fact is very limited. As repeatedly stated by the Supreme Court a jury's verdict will not be set aside if there is any competent evidence from which reasonable minds could infer the facts supporting the verdict. *Greyhound Corp. v. Gonzales De Aviles*, 391 P.2d 273 (Okl.1963). Simply stated, the record below contains ample evidence from which the jury could conclude that the Listing Contract created a right in the Plaintiff provided only that he produce a buyer ready, willing and able to buy the surface and the minerals (or ½ the minerals) owned by the Defendants netting them $225,000. So construed, there is no error for this Court to correct.

## C. The Instructions

 The Defendants complain that the trial court refused three instructions and as a consequence failed to instruct on fundamental propositions of law.[1]

The requested instructions are as follows:
> "1. You are further instructed that a contract, whether written or oral, or

---

1. Defendants' brief-in-chief failed to comply with Supreme Court Rule 15 which requires a brief complaining about the refusal to give an instruction to "set out *in totidem verbis* the instruction . . . to which he objects together with his objection thereto." In the case of a refused instruction where the actual in-

structions allegedly omit the issue, the refused instruction must be given and the deficiency stated. Since the Plaintiff has not objected and the refused instructions were set out in the Defendants' reply brief, we will consider the issue as if properly raised.

a combination of writing and oral agreement, is an agreement between two or more parties, competent to contract, upon a lawful subject matter, with a legal consideration, a mutuality of agreement, and mutuality of obligation.

No precise or set form words is necessary to constitute a contract as the agreement of the parties may be inferred from their acts and conduct, as well as from their words.

In order to constitute a contract between two parties, however, their minds must come together and agree upon all its essential terms and conditions. In other words, there must be a meeting of the minds of the contracting parties upon the essential terms and conditions of the subject about which they are contracting.

2. You are further instructed that a contract for the listing of real estate for sale between an owner or owners and a broker may be in writing, or oral, or may be a combination of written and oral agreement.

5. You are further instructed that the possession and actual residence of a party upon real estate constitutes notice to the world as a matter of law, of the claims of such person in and to such real estate, and further constitutes notice to all persons dealing in any manner with such real estate, of all claims which would have been revealed had *diligent inquiry* been made as to any claims of any person in possession or residing on said premises." (Emphasis added.)

■ As set out in note one, *supra*, the requested instructions involve (1) an abstract statement of the essence of a contract, (2) the effect of a partially written and partially oral contract, and (3) the notice consequent of a stranger to the record title being in possession. The Court's instructions did not define a contract or expressly state that a contract could be oral or

in writing. But Court's Instruction No. 3 did make clear that a listing contract required a broker "to find a purchaser . . . upon all the terms and conditions of his listing or [sic] contract, written, oral, or both . . . ." We believe that if the jury had any doubt that the contract between the parties could be partially oral that this instruction adequately informed them.

■ We also find no reversible error in the Court's refusal to give the abstract definition of a contract. Jury instructions must be viewed as a whole and reversible error will not be found where the instructions adequately inform the jury on the issues framed by the evidence. *Karriman v. Orthopedic Clinic*, 516 P.2d 534 (Okl.1972); *Gasko v. Gray*, 507 P.2d 1231 (Okl.1972). Here there was no dispute that the written and oral agreement, whatever it was, bound the parties. Thus the jury had no issue as to the contractual nature of the transaction. The fact dispute was over the oral terms. If Plaintiff's view of the terms was right, he had performed, if not, he was not entitled to the commission. We find no reversible error.

■ Requested instruction number 5 on its face is a reasonably accurate statement of law and is not challenged by the Plaintiff as inaccurate. Generally, a purchaser of real property in the open, notorious possession of someone, other than his grantor, is put on inquiry as to that person's interest, and if he purchases without inquiry, he takes subject to that interest. *Adams v. White*, 40 Okl. 535, 139 P. 514 (1914), and *Geb v. Wilkins*, 399 P.2d 456 (Okl.1965). But as framed by the evidence the issue was not whether the alleged life tenants' interest had priority over a purchaser as a matter of title. Rather, the evidence posed the question whether the Defendants had informed the Plaintiff that such a reservation was a term of the listing contract. The case did not deal with the interests of a subsequent purchaser but whether the Plaintiff-Broker procured an

offer which matched, in good faith, the terms of the listing contract, oral and written.[2] So construed, the Court's instructions adequately addressed the issues formed by the parties.

### D. Trial Conduct

Defendants allege prejudicial error was committed by repeated improper questions by Plaintiff's counsel and improper statements in Plaintiff's closing remarks. Specifically, Defendants allege that they objected 51 times and were sustained 44 times, and that Plaintiff's counsel stated in his closing argument (1) that one of the Defendants "had been coach[ed] to say" a particular thing and (2) "[l]et's forget the fact that [defendants' counsel] . . . 5 to 10 percent . . . ." Plaintiff responds that the objections were to relevant evidence and that the trial court's rulings were erroneous in large part, that he only meant to suggest that the Defendant mentioned had colored his testimony to reflect most favorably on his case and that such a suggestion is proper where categorically different stories are presented to a jury, and that he raised the issue of defense counsel's fees because defense counsel had raised the issue of Plaintiff's counsel's fees and the reasonableness of the 5% commission charge in his closing argument.

 We are cited several cases but believe the issue was well handled by the judicial officer most able to judge its effect on the jury, i. e. the trial judge. The case was hotly contested with considerable directly conflicting testimony between principal witnesses. In ruling on the Defendants' motion for new trial the trial judge said:

> "There is no doubt that it was a hotly contested case and still appears to be. I don't know whether or not [Plaintiff's Counsel's] method of trial of this case itself influenced the jury, it certainly

didn't make any impression on me one way or the other.

\* \* \* \* \* \*

. . . I don't believe that the conduct influenced the jury in their findings."

It is axiomatic that the conduct of a trial rests in the discretion of the trial court. *Hazelrigg Trucking Co. v. Duvall*, 261 P.2d 204 (Okl.1953); *England v. Kilcrease*, 456 P.2d 521 (Okl.1969); and *Sisler v. Jackson*, 460 P.2d 903 (Okl.1969). We have carefully reviewed the entire transcript. While we cannot approve every act of counsel for both sides we also cannot say that the trial court failed to control the lawsuit or abused his discretion. Our conclusion from the record is the same as the trial court's.

### E. The Attorney's Fee

 Plaintiff's cross-appeal challenges the trial court's denial of his motion for an attorney's fee. Plaintiff argues that under 12 O.S.1971, § 936 an attorney's fee "shall be allowed" to the prevailing party in "any civil action to recover on [a] . . . contract . . . for labor or services . . . ." Defendants' counter-argument is essentially that the activities of a real estate broker do not fall under the phrase "contract . . . for labor or services. . . ." Apparently recognizing that the broker's activities must be a service, Defendants invite us to construe "labor or services" as if it meant "labor, that is to say, services." So construed, we are then told that the only services which qualify are those involving, apparently, manual labor. We decline the invitation to engage in this sort of unrealistic reasoning. The activities of a real estate broker are clearly services and frequently involve labor as well. To ignore the plain meaning of the statute requires some sound basis in principle or the legislative history which would suggest that the phrase "labor or services" had been

---

2. There is some doubt as to whether the evidence of the oral terms violated the parol evidence rule in that they were apparently prior to or contemporaneous with the written agree-

ment. 15 O.S.1971, § 137. The parties have not urged the matter on appeal so we express no opinion thereon.

used in other than its ordinary meaning. Neither principle nor history has been suggested to show a contrary meaning.

An attorney's fee should have been allowed under the statute. We decline to fix the fee in this Court and remand the case to the District Court for the fixing of a reasonable attorney's fee.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.

BOX, P. J., and REYNOLDS, J., concur.