Iris JAMES, Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, State Farm Fire and Casualty Company, State Farm General Insurance Company, State Farm Life Insurance Company of Bloomington, Illinois, Clarence Zitterkob, and Frank Green, Appellees.**

No. 66610.

Supreme Court of Oklahoma.

April 16, 1991.

Sam T. Allen, IV, Loeffler & Allen, Sapulpa, for appellant.

J. Patrick Cremin, F.M. Hagedorn, Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Tulsa, for appellee, State Farm Companies.

Fred C. Cornish, Cornish & Renbarger, Inc., Tulsa, for appellee, Clarence Zitterkob.

Joe Sam Vassar, McMillan, Vassar & Kelly, Bristow, for appellee, Frank Green.

SIMMS, Justice:

Iris James (James), plaintiff below, appeals from an adverse judgment in her fraud action filed against Clarence Zitterkob and Frank Green, individually-named appellees, and the collective State Farm Companies (State Farm). James appeals asserting error by the trial court in rulings concerning the admission of evidence and jury instructions. Because we find no reversible error in the trial court's rulings, we AFFIRM the judgment of the trial court.

James, a resident of Sapulpa, Oklahoma, heard that State Farm was interested in training a qualified individual to become one of its agents in Glenpool, Oklahoma, which is located approximately eight (8) miles from Sapulpa. She immediately contacted Zitterkob, the agency manager responsible for recruiting and training new agents in the Tulsa area. Under his supervision, she began training to become an agent believing she would be placed as an agent in Glenpool. At the time of their first meeting, James was teaching in the Sapulpa School system where her husband worked as a principal. She testified, as did

her husband, that they were assured by Zitterkob that relocation to Glenpool would not be necessary in order for her to be an agent in Glenpool.

James further testified that when she met Green, Zitterkob's supervisor, Green confirmed to her that relocation was not a requirement to her being the Glenpool agent. At this meeting, James stated that Zitterkob also said that she would soon be a State Farm agent in Glenpool. Shortly after the meeting, James resigned from her teaching position in order to take the state licensing examination.

James passed the state examination, was licensed by the State Insurance Commission, and listed with the state of Oklahoma as a State Farm agent. Trial exhibits establish that Norvel Trask, Green's supervisor and the top executive in the regional office, authorized the listing. James testified that Zitterkob then informed her that she needed to complete an "x-dating" assignment before being placed as an agent. She began working diligently to finish the "x-dating" work which involves searching county records to obtain names, addresses and phone numbers of home owners who could be potential clients. However, a short time later, Zitterkob informed her that there was no place for her as an agent with State Farm. James then contacted Green who allegedly told her that company policy required their agents to live in the community they serve.

James testified that Zitterkob told her that he was trying to get her placed as an agent in south Tulsa or Sapulpa, as well as appealing the decision not to place her in Glenpool. Nothing came of these efforts, and James filed this suit claiming Zitterkob and Green misled her into believing that it would be no problem for her to live in Sapulpa and run the agency in Glenpool. According to James, this and other acts and omissions by the appellees constituted fraudulent misrepresentation.

The appellees' testimony contradicted James' allegations of "promises" of employment and need for relocation. Testimony indicated that the company did not have a "requirement" that agents live in the community they serve but that it was a practice encouraged by the company. The defense also presented a document signed by James entitled "Declaration of Understanding" in which the signer acknowledges that they understand (1) that they will not receive compensation from State Farm during the training period, and (2) that they should not change their current employment until officially approved for appointment as an agent through the regional office and execution of a State Farm Trainee Agent's Agreement. James never signed a Trainee Agent Agreement.

### I.

James first argues the trial court erred in admitting Defendant's Exhibit I, a letter James received from Trask approximately three months after the action was filed. The trial court deleted portions of the letter which concerned an offer made by legal counsel of appellees, but admitted the exhibit over James' objection. The letter reads as follows, with the deleted portions shown within brackets:

"Dear Mrs. James,

In light of the recent interrogatories from your lawyer, it appears that you believe you were never offered a position as a trainee agent in Glenpool. If that is your belief, it is based on a misconception. You have been offered the position [twice]: Once by letter from Frank Green dated October 26, 1984 [and again through our attorney, J. Patrick Cremin.] This is a final unconditional offer of the position in Glenpool, pursuant to our current contractual arrangements with trainee agents, which reconfirms our prior [two] offer[s.] We again would urge you to live in Glenpool; however, we will leave that choice up to you, as we are interested in appointing you as a trainee agent to serve our policyholders and prospects in the Glenpool area.

Please let me know within ten (10) days of your decision in this matter so that we can insure better service to the residents of Glenpool.

Sincerely,

/S/

Norvel J. Trask, CLU

Deputy Regional Vice President"

James claims this letter is an offer of compromise which is inadmissable under 12 O.S.1981, § 2408. This statute provides, in pertinent part:

"Evidence of:

1. Furnishing, offering or promising to furnish; or

2. Accepting, offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for the claim, invalidity of the claim or the amount of the claim.

\*  \*  \*  \*  \*  \*

This section does not require exclusion of evidence when it is offered for another purpose, including proof of bias or prejudice of a witness, negativing a contention of undue delay, or proof of an effort to obstruct a criminal investigation or prosecution."

Appellees argue that the letter was not an offer to compromise the claim and that it was not offered to prove the invalidity of the claim. Rather, they offered it to prove that a mistake had occurred, mistake being a defense to fraud. Defendant's Exhibit I was introduced and admitted during cross-examination of James. Earlier, *James offered,* and the trial court admitted the October 26, 1984 letter from Green which Trask refers to in his letter. In his letter to James, Plaintiff's Exhibit No. 25, Green offers the position in Glenpool to James but conditions it upon her moving to Glenpool. In their Response Brief, appellees argue that this condition was mistakenly added to the offer and the Trask offer was sent to straighten out the mistake. The letter in turn was introduced into evidence to show that the earlier condition of moving to Glenpool was a mistake and James could be the Glenpool agent without moving. Thus, appellees assert, it was "offered for another purpose" and was properly admitted.

This Court has never before construed Section 2408. The Court of Appeals applied Section 2408 in *Cleere v. United Parcel Service,* 669 P.2d 785 (Okla.Ct.App.

1983). However, the court in *Cleere* was concerned with the admissibility of a compromise settlement entered into by the plaintiff and a third party under both Section 2408 and 12 O.S.1981, § 832, Oklahoma's version of the Uniform Contribution Among Tortfeasors Act. Although persuasive, we cannot rely on the rationale of *Cleere* due to the factual differences presented by the instant case. Other persuasive authority exists though, as Section 2408 is both a codification of the common law of this state and a duplication, "with minor grammatical alterations," of Rule 408 of the Federal Rules of Evidence. (See Evidence Subcommittee's Notes of 12 O.S. 1981, § 2408.) Thus, in construing the statute, we may look to the construction given similar statutes in other jurisdictions.

■ We need go no further than noting that the letter does not appear to be an offer of "a valuable consideration *in compromising or attempting to compromise a claim."* 12 O.S.1981, § 2408 (Emphasis added). In *South v. Toledo Edison Co.,* 32 Ohio App.3d 24, 513 N.E.2d 800, 805 (1986), the court faced a similar issue as that before us. A former employee of the defendant company brought an action for unlawful age discrimination in employment, breach of implied employment contract, and tortious wrongful discharge when the company terminated her. On appeal from an adverse judgment, the former employee argued that the trial court erroneously admitted letters sent to her by representatives of the company which offered the plaintiff another position with the company. In applying Ohio's version of Rule 408, the appellate court held:

"It is manifestly clear, however, that the letters in question ... do not fall within the rule, because they conveyed no obligation, on the part of the appellant [employee], to compromise whatever claims she may have had against her employer. The letters of offer were sent in an attempt to provide appellant with the option of continued employment, and were not an attempt to compromise those claims raised in the suit below. Evidence

of the letters was, for this reason, clearly admissible."

Likewise, the letter from Trask did not convey any obligation on James' part to compromise the fraud claim she had instituted. The letter merely states that some mistake had occurred, and that the position in Glenpool was still available for James if she opts for it within ten days. Oklahoma's common law definition of compromise suggests a finding that Defendant's Exhibit I was not an offer of compromise for the same reasons espoused in *South v. Toledo Edison Co.*, supra. A compromise is "an agreement between two or more parties who, to avoid a lawsuit, amicably settle their differences on such terms as they agree on." *Fisk v. Bullard*, 205 Okl. 502, 239 P.2d 424, 427 (1951); *Owens v. Lynch*, 147 Okl. 298, 297 P. 223, 227 (1931); 15A C.J.S. *Compromise and Settlement*, § 1 (1967). "It is essential to a compromise that there be mutual concessions or yielding of opposing claims." *Owens v. Lynch*, supra. The letter did not require any concessions on James' part. Therefore, the letter was not an offer to compromise.

A similar finding was made in *Thomas v. Resort Health Related Facility*, 539 F.Supp. 630 (E.D.N.Y.1982), an employment discrimination action in which the employer's representatives offered to reinstate the plaintiff to the terms and conditions of his former position without prejudice to plaintiff's action, much like the "final unconditional offer of the position in Glenpool" which Trask made in his letter to James. Like James, the plaintiff in *Thomas* rejected the offer. In ruling upon the defendant employer's summary judgment motion, the court held that evidence of the offers of reinstatement was admissible because they were not made to compromise the claim. The offer of employment was unrelated to settlement discussions which had occurred and was "offered for another purpose." See Fed.R.Evid. 408; 12 O.S. 1981, § 2408.

In a fraud action, a Texas trial court also admitted evidence of settlement negotiations which was offered for another purpose, to show the statements alleged to be misrepresentations. *Portland Savings & Loan Association v. Bernstein*, 716 S.W.2d 532, 537 (Tex.Ct.App.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1200, 89 L.Ed.2d 313 (1986). The reviewing court held that since the negotiations were offered for a purpose other than to prove the liability of the fraud claim, the statements were not prohibited by TEX.R.EVID. 408, which is almost identical to Section 2408. If settlement negotiations are admissible under this evidentiary rule as proof of statements alleged to be misrepresentations, we feel equivalent statements are admissible under Section 2408 as proof of alleged mistakes made by a fraud defendant.

Therefore, we hold that the letter from Trask was admissible as evidence of mistake, and not prohibited by Section 2408 because it was not an offer of compromise presented as evidence to prove invalidity of James' claim of fraud.

## II.

■ In her second proposition, James asserts trial court error in refusing to admit Plaintiff's Exhibit No. 56, a photocopy of the Findings of Fact and Conclusions of Law in a federal district court action where the court concluded that State Farm discriminated on the basis of gender against plaintiffs unrelated to this case. James offered the copy of *Kraszewski v. State Farm*, 38 Fair Empl.Prac.Cases (BNA) 197, 1985 WL 1616 (N.D.Cal.1985) as evidence of sex discrimination, allegedly the motive for the fraud in her lawsuit. The trial court refused to admit the exhibit because he found it had no bearing on the case at bar. We agree.

*Kraszewski* was a class action lawsuit brought against the four State Farm companies for sex discrimination in selecting and appointing agents in the California area. The case did not involve either of the individually-named defendants in James' action nor with the region of State Farm operations which encompassed Oklahoma. James made an offer of proof in attempting to show that the discrimination State Farm was found to have practiced in Cali-

fornia showed that State Farm was discriminating against her in Oklahoma. We fail to find the connection which James argues. Although James offered testimony which showed that three male agents who serviced the State Farm policyholders in Glenpool prior to 1984 all resided in cities other than Glenpool, we agree with the trial court that this shows "more of a pattern ... than sex discrimination."

The offered exhibit did not tend "to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." 12 O.S.1981, § 2401; *Helm v. State Election Bd.*, 589 P.2d 224, 234 (Okla.1979). Therefore, it was not relevant, and the trial court properly excluded it under 12 O.S.1981, § 2402. Moreover, the exhibit should be excluded under 12 O.S.1981, § 2403 as "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, [and] misleading [of] the jury." See *Madill Bank and Trust Co. v. Herrmann*, 738 P.2d 567, 571 (Okla.Ct.App.1987). The action filed and tried was one in fraud, and the jury might be confused and misled by allegations of sexual discrimination with no basis in the facts of the case before it.

For the same reasons, the trial court properly prohibited any voir dire questioning, opening statement, direct examination, and oral argument on the issue of sex discrimination. The trial court determined the discrimination issue was irrelevant and ordered counsel not to question either jurors or witnesses about sex discrimination and not to mention it in the opening statement or closing argument. Because we agree that the sex discrimination issue was not relevant, we find no error in the ruling of the trial court.

### III.

■ James next argues that the trial court committed error by refusing to admit tape recorded conversations James had with Zitterkob and Green which James taped unbeknownst to the other parties. Appellees objected on several grounds. Counsel for James asked the trial court to reserve his ruling, listen to the tapes, review transcripts of the recordings, and rule on the exhibits later when they were offered again. The trial court did as counsel requested, and upon re-offer, the trial court refused admission on three primary grounds: (1) identification of the speakers posed a problem for the jury, (2) the tapes contained a great deal of self-serving and cumulative material which "would probably tend to overemphasize the testimony of the Plaintiff, who has previously testified as to all or most of the conversations," and (3) the tapes were somewhat inaudible and it "would be unfair to ask the jury to hear it."

Although the trial court found that the tapes contained admissions against interest, he determined that these admissions could be obtained by questioning Zitterkob and Green. The trial court stated that if the two defendants denied the statements, then the court would allow James to introduce the tapes to impeach the defendants. Throughout James' examination of Green and Zitterkob, who were called as adverse witnesses in James' case in chief, counsel examined Green and Zitterkob about these recorded statements, and neither denied making the statements. Therefore, introduction of the tapes under the trial court's ruling was unnecessary. At the end of the case in chief, James offered the tapes again, and the trial court overruled.

■ It is lawful for one party to record conversations had with another when not done for the purpose of committing a criminal act. 13 O.S.Supp.1983, § 176.4(5); *State ex rel. Oklahoma Bar Association v. James*, 463 P.2d 972, 975–76 (Okla.1969); *Chaney v. State*, 612 P.2d 269 (Okla.Crim. App.1980), *cert. denied*, 450 U.S. 1025, 101 S.Ct. 1731, 68 L.Ed.2d 219 (1981). Furthermore, like all exhibits, tape recordings of conversations must pass a relevancy test before being played to the jury. See *Chaney, supra*. The trial court did not make a specific ruling as to relevancy other than to find that the tapes contained admissions against interest. However, the court's ruling indicates that the probative value was outweighed by the danger of unfair preju-

dice in the form of cumulative, self-serving and overemphasized testimony. The admissibility of evidence and the conduct of a trial are matters within the sound discretion of the trial court. *Jordan v. General Motors Corp.*, 590 P.2d 193, 196 (Okla. 1979); *Nail v. Children's Memorial Hosp.*, 710 P.2d 755, 760 (Okla.1985). We find no abuse of discretion in the trial court's ruling.

### IV.

■ James next asserts error in the trial court's refusal to allow James to question witnesses on particular issues and admit the deposition of another. However, she cites no relevant authority to suggest that the court's rulings were erroneous. We refuse to consider assignments of error, unsupported by convincing argument or authority, unless it is apparent, without further research, that they are well taken. *Paris Bank of Texas v. Custer*, 681 P.2d 71, 78 (Okla.1984).

### V.

■ James' final evidentiary proposition relates to Plaintiff's Exhibit No. 47. She claims the trial court refused to admit the exhibit. However, the record reveals that counsel withdrew the exhibit and the trial court expressly stated that he had not even ruled upon its admittance. James points to no instance where the exhibit was re-offered. In *Midwestern Engine and Equipment Co., Inc. v. Childers*, 323 P.2d 738 (Okla.1957), we found no error in an identical situation. Therein, an exhibit was offered, withdrawn and never reoffered by the party alleging error. We held that "[s]ince there is no ruling by the court excluding the evidence, no error in this regard is presented for review." *Id.*, at 740–41.

### VI.

In several propositions, James asserts the trial court erroneously refused to give her requested jury instructions and erred in the use of one of the appellees' requested jury instructions. James failed to set out the complained of instructions in her brief in chief, and appellees argue that any error is waived because she failed to comply with Rule 15 of the Rules of the Supreme Court, 12 O.S.1981, Ch. 15, App. 1. Rule 15 describes the requisite contents of briefs filed in this Court and states, in pertinent part:

> "Where a party complains of an instruction given or refused, he shall set out *in totidem verbis* the instruction or the portion thereof with his objection thereto."

■ Generally speaking, errors in refusing requested instructions or in giving objectionable instructions are waived when not set out in compliance with this rule. *Springfield Fire & Marine Ins. Co. v. Simmons*, 184 Okl. 323, 87 P.2d 941, 946 (1938); *Security National Bank of Sapulpa v. Hufford*, 754 P.2d 561, 566 (Okla.Ct. App.1987).

James claims that any error was cured when she set out the instructions in her reply brief citing *Bentley v. Hardin*, 577 P.2d 471, 473 (Okla.App.1978) as support. *Bentley* indicates that when a party fails to set out complained-of instructions *in totidem verbis* in its brief in chief, the issue will be considered as if properly raised where the opposing party *does not object* and the instructions are set out in a reply brief. Appellees properly objected, and a cursory review of *Bentley* would seem to suggest that James' arguments have been waived. However, Rule 15 does not clearly indicate whether complained of instructions must be set out in the brief in chief or whether a recitation of the instructions in a reply brief is satisfactory. Moreover, James argues that Rule 15 predates the amendment to Rule 18 of the Rules of the Supreme Court which limits the length of briefs to thirty (30) pages. She infers that with numerous witnesses and exhibits being offered at trial and with a transcript exceeding eight hundred (800) pages in length, it is difficult to both set out the instructions in the text of the brief and make all the necessary legal arguments within thirty pages.

■ We note this difficulty and hereby revise our application of Rule 15. From

the date of mandate in this case forward, the requirement of Rule 15 that complained of jury instructions or requested instructions must be set out *in totidem verbis* is amended to permit litigants to set out such instructions in an appendix attached and in addition to the 30 page brief.

■ Rule 15 also requires that where admitted or rejected testimony is at issue, it must be set out in the brief as well. We recognize that lengthy quotations of such testimony and other discourse may also hinder litigants from fully briefing their arguments. Therefore, *verbatim* quotations from the record as provided by Rule 15 shall be set forth in an appendix in the same manner as the instructions. Insofar as *Bentley* is contrary to this holding, it is hereby disapproved. Having so held, we now address James' propositions concerning the instructions requested and given.

In *Nail v. Oklahoma Children's Memorial Hosp.*, 710 P.2d 755, 759 (Okla.1985), we stated that:

"a judgment is not to be disturbed on appeal because of allegedly erroneous instructions unless it clearly appears that the instructions given or refusal either caused a miscarriage of justice or led to a different verdict than would have been rendered but for this alleged error."

■ In one proposition, James asserts error in Instruction No. 13 given by the trial court on the grounds that it is unsupported by evidence. It states:

"When circumstances that give rise to an allegation of fraud may be fairly understood or explained in two ways, and one of these ways does not involve fraud, you must adopt the way of understanding or explaining the circumstances that does not involve fraud."

This instruction is an accurate and representative paraphrase of the law found in *Brooks v. LeGrand*, 435 P.2d 142 (Okla. 1967), and *Tyler v. Hartford Accident & Indemnity Co.*, 195 Okl. 523, 159 P.2d 722 (1945). Appellees' primary defense was mistake. They presented ample evidence to support this defense, and the trial court gave the above instruction so the jury would be able to determine whether the

action was one resulting from fraud or mistake. *Justice v. Harrison*, 569 P.2d 439 (Okla.1977). The instruction was properly given by the trial court.

■ James next asserts error in the trial court's refusal to give Requested Instruction No. 3 which explains that it is legal for one person to secretly tape record a telephone conversation had with another and that the jury may consider the tape recordings admitted into evidence for whatever probative value they may deserve. Because the tape recordings were properly excluded from evidence per our holding in Part III of this decision, this instruction was properly refused as well. Confusion would likely result from an instruction specifically tailored for evidence not presented to the jury. Therefore, even though James' instruction properly stated the prevailing law in Oklahoma on the subject, it was properly refused as irrelevant and potentially misleading. Indeed, *Nail* holds that it is reversible error "to instruct on issues not justified by the pleadings and evidence." 710 P.2d at 758. *See also State Bank of Parsons, Kansas v. Elliott*, 447 P.2d 778 (Okla.1968).

■ James further argues error in the trial court's refusal to instruct the jury on damages for mental anguish. James' requested instruction accurately defined the term "emotional distress" according to Oklahoma Uniform Jury Instructions–Civil (OUJI–CIV) No. 19.3. However, the trial court refused it because the court found that James failed to present medical evidence to support an allegation of emotional distress. James argues that the law of Oklahoma does not require medical evidence to prove emotional distress. Absent a finding that the defendants had committed a tort, James is not entitled to damages, whether for physical injuries, pain and suffering, or mental anguish. As such, the failure of the trial court to instruct the jury on James' alleged mental anguish was not reversible error because a different verdict would not have resulted but for the refusal to so instruct. *Nail,*

*supra; Woodall v. Chandler,* 716 P.2d 652, 654 (Okla.1986).

■ James' final proposition concerns Requested Instruction No. 14 which the trial court refused. This instruction reads:

"You are hereby instructed that the Declaration of Understanding which plaintiff signed on February 2, 1984, and which is plaintiff's Exhibit No. __ in this case does not bar or prevent her recovery from any of the defendants because the plaintiff was prevented by law from complying with it."

As authority for this instruction, James cites 36 O.S.Supp.1983, § 1425 which prescribes the requirements for licensing an insurance agent in Oklahoma. She asserts that in order to be a licensed agent, she had to take the state licensing examination, but that before she could take the examination, she had to resign her job. James fails to show why she had to resign. Moreover, she fails to assert any convincing reason why she was prevented by law from complying with the Declaration of Understanding. She argues that she was induced by fraud to enter into it and is not bound by its term under the authority of *Blackburn v. Morrison,* 29 Okl. 510, 118 P. 402 (1910) and *McLean v. Southwestern Casualty Ins. Co. of Oklahoma,* 61 Okl. 79, 159 P. 660 (1915). Be that as it may, the jury did not find fraud in the actions of appellee. The instruction did not pertain to a material issue in the case. *See State Bank of Parsons, Kan. v. Elliott,* 447 P.2d 778, 782 (Okla.1968).

The trial court's failure to give this requested instruction did not cause a miscarriage of justice, and a different verdict would not have resulted had it been given. We find no reversible error in the jury instructions given or refused.

For the reasons above stated, the judgment appealed from is AFFIRMED.

HODGES, V.C.J., and LAVENDER, DOOLIN and HARGRAVE, JJ., concur.

SUMMERS, J., concurs in result.

OPALA, C.J., and KAUGER, J., concur in part, dissent in part.

ALMA WILSON, J., concurs in that part of the opinion that modifies Rule 15; and dissent to affirmance of trial court judgment for the reason that it was reversible error to admit the self-serving, prejudicial letter of defendant into evidence.