**IBERIAN TANKERS COMPANY,**
Plaintiff,

v.

**GATES CONSTRUCTION CORP.,**
Defendant.

No. 68 Civ. 4495.

United States District Court,
S. D. New York,

Jan. 15, 1975.

Bigham, Englar, Jones & Houston, New York City, for plaintiff; Donald M. Waesche, Jr., New York City, of counsel.

Hill, Rivkins, Carey, Loesberg & O'Brien, New York City, for defendant; J. Edwin Carey, Raymond P. Hayden, New York City, of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

As appears from my previous opinion (369 F.Supp. 474) this is a mutual fault

case not involving a collision. In other words, although the fault of both parties contributed to the accident, defendant was the only one against whom recovery could be had. In these circumstances I felt myself constrained by The Wright (2d Cir. 1940) 109 F.2d 699, 702 to grant pre-judgment interest despite my predisposition to do otherwise.[1] The Court of Appeals ruled that I had excessively limited the scope of my discretion, and remanded the matter for further consideration (504 F.2d 747).

Upon such remand plaintiff advanced an argument not previously considered, namely that interest should be awarded to compensate plaintiff for defendant's refusal—beginning at least in January of 1970—to accept plaintiff's offer to settle the question of liability on the 50–50 basis at which the court arrived after a full trial in June of 1973. This new argument presents a question which does not seem free of doubt, so I shall —as I did on the previous occasion—set forth my reasoning "in some detail so that adequate appellate relief can be assured" (369 F.Supp. at 475).

The validity of plaintiff's new position would seem to turn on the answer to four questions: (1) Did plaintiff make a bona fide firm offer to settle? (2) If so, did defendant have a good faith reason for rejecting such offer? (3) Was either party responsible for any undue delay following such rejection? (4) To what extent, if any, did defendant benefit by the use of the money it retained after its rejection of plaintiff's offer, which money was ultimately found owing to plaintiff?

The facts relevant to the first question can be briefly summarized. Plaintiff asserts without substantial contradiction that shortly after it retained counsel, its attorneys began urging that the matter be settled on the basis of 50–50 liability, that they formally advanced this position in a letter to defendant's counsel dated January 20, 1970, that they renewed their offer in a further letter dated November 2, 1970, and that they never wavered in their willingness to settle on that basis. Defendant on the other hand points out that, although frequently prompted, plaintiff did not come up with its final figures as to damages until some time after the court had actually established liability. Consequently, defendant argues, that there never was a realistic *pre*-trial offer of settlement.

■ Under ordinary circumstances, defendant's position would seem well taken. Not so, however, in the peculiar circumstances of this case. It seems to have been apparent from the outset that the parties never intended to litigate the extent of damage. Damages were always considered to present a "back office" problem to be handled by accountants and administrative personnel. The lawyers were concerned only with liability: was it to be 100, 50 or 0%?[2] That question of apportionment could as easily have been settled in 1970 by the lawyers acting without exact figures as it was by the court in 1973. Had it been so settled, the back office could have come up with exact figures as readily in 1970 as in 1973.[3] I therefore find as a fact that the plaintiff's letter of January 20, 1970 was, and should be treated as, a firm offer of settlement.

■ With respect to the second question, I have already noted that plaintiff

---

1. ". . . having found that plaintiff's negligence was more clearly established than defendant's, we should—if our discretion were controlled only by our innate sense of the fitness of things—be inclined to deny plaintiff's claim for interest in order to 'ameliorate somewhat the harsh American rule that division of damages must be equal without reference to the degree of fault'."

2. For example, the pretrial order specifically reserved any questions concerning the extent of damages.

3. If defendant can challenge this assumption, it may move for reconsideration.

"just about" established defendant's negligence (see 504 F.2d at 748). It necessarily follows that defendant cannot be charged with bad faith in insisting on litigating the question of fault.

As to the third question, I have already found that plaintiff was in no way responsible for delay in bringing the case to trial (369 F.Supp. at 475). I now make the same finding with respect to defendant. The delay was due solely to the court's then unmanageable calendar.

■ This brings us to the final question. How much, if any, benefit did defendant derive from the use—from January of 1970 to June of 1973—of the $280,000 ultimately found to be due to plaintiff? With respect to that, I will take judicial notice that the three month bill rate (i. e. the return available from investment in U. S. Government securities with three months' maturities) averaged a little over 4½% during the period in question.[4]

■ On the basis of the foregoing it would seem that the defendant should be required to pay at least the amount [5] it could have earned on the money by investing in no risk Government securities.

Defendant advances two interrelated reasons why I should decline to reach such a conclusion. First, it argues that Rule 408 of the Federal Rules of Evidence prevents me from even considering as relevant to my decision any offer of settlement. Second, it argues that, had I the power to consider such an offer, I should decline to do so for fear of chilling any settlement negotiations in future cases. I reject both contentions.

■ As to Rule 408, that Rule excludes evidence of settlement discussions only when such evidence is offered on the issue of "liability". It has no application to the matter at hand.

Nor do I believe that giving plaintiff credit for its 1970 offer to settle will chill future settlement negotiations. On the contrary, I believe it will have the opposite effect. Even if compelled to pay the suggested 4½% interest, defendant will still have benefited by the delay engendered by its refusal to settle. If it were the law that a defendant in such circumstances could never be required to pay any prejudgment interest, no responsible defense lawyer could recommend settlement to a client—at least in a case, such as this, where there was no substantial chance of worsening the client's position by litigation, and where the sums involved were large enough to insure that interest earned by delay would more than pay for counsel fees necessary to keep the litigation alive. Such a rule of law would not, therefore, appear to be sound policy.

■ In view of the fact that I have found defendant's refusal to settle not to have been unreasonable, there appears to be no authority squarely in point.[6]

---

4. *Salomon Bros. Statistical Yields* discloses that bills of three months maturity had an average return of 6.58% in 1970, 4.39% in 1971, 4.02 in 1972 and 6.87 in 1973 (the last figure needing to be discounted because it reflects unusually high rates in the last half of the year.

5. The parties are in agreement that the court has power to fix a rate less than legal interest.

6. Interest was allowed in the following cases upon a showing of unreasonable or excessive delay. Shinko Boeki Co. v. S. S. Pioneer Moon (Frankel, J., S.D.N.Y.1974) 1974 A.

M.C. 567, rev'd on other grounds 507 F.2d 342. Interstate Steel Corporation v. S. S. Crystal Gem (Tenney, J., S.D.N.Y.1970) 1970 A.M.C. 629. Judge Bonsal's decision in Moore McCormack Lines v. Steamship Portmar (S.D.N.Y.1966) 1967 A.M.C. 525 is not to the contrary. He there observed that "off-the-record settlement discussions . . . provide insufficient grounds" for the allowance of interest. Examination of the papers on file in that case discloses that there had been no written offer and that Judge Bonsal was referring to the type of oral discussion which had preceded the instant plaintiff's letter of January 20, 1970.

However, I find that both justice as between these parties and the hope of encouraging the settlement of future litigation requires the allowance of interest from the date of the first firm offer of settlement.

I accordingly deny any interest prior to January 20, 1970 (the date of plaintiff's first written offer) but grant 4½% interest to commence at a subsequent date to be calculated as follows: The parties are to determine how many days after the close of trial (when I made my initial determination of liability) plaintiff came up with final figures as to damages, and interest will commence to run that number of days after January 20, 1970. Hopefully the parties can—as they did last time—stipulate to the results of the application of this formula without waiving any right to challenge the formula on appeal.

So ordered.