Michael THOMAS, Plaintiff,

v.

RESORT HEALTH RELATED FACILITY, Jacqueline Kornegay, Monica Brown and Morris Tenanbaum, Defendants.

No. 81 C 229.

United States District Court,
E. D. New York.

May 26, 1982.

Cuthbert J. Barry, Brooklyn, N. Y., for plaintiff.

Frank A. Romano, New York City, for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff, a black male originally from Granada, West Indies, brought this action to redress alleged discrimination in employment, pursuant to the Civil Rights Act of 1866 and 1871, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (1976). Invoking federal jurisdiction under 28 U.S.C. §§ 1331, 1343(4) and 42 U.S.C. § 2000e–5(f)(3), the complaint alleged that plaintiff's employer, Resort Health Related Facility ("Resort"), and the individual defendants Kornegay, Brown and Tenanbaum, supervisory and administrative personnel employed by Resort, discriminated against plaintiff during his employment at Resort because of his race, color, national origin and sex.

Plaintiff worked for Resort as a personal care attendant from June 1975 to February 5, 1980, when he was informed of his suspension from work until a psychiatric evaluation could be obtained. This decision apparently grew out of plaintiff's discordant relations with a Resort nurse, Delores Charles. Allegedly, Resort refused to accept an evaluation plaintiff submitted, favorable to himself, and insisted that a Dr. Gold examine him. Plaintiff refused to undergo this examination, and he has not worked for Resort since February 1980. His complaint seeks injunctive and declaratory relief, reinstatement, back pay, and $200,000 in money damages for mental anguish, humiliation and loss of self respect.

The action is now before the court upon several motions by defendants: (1) to strike plaintiff's jury demand, or, in the alternative, to bifurcate trial of liability and damages issues; (2) for a partial summary judgment limiting the period of plaintiff's potential back pay recovery to the date when plaintiff rejected defendants' unconditional offer of reinstatement, or if that is denied, to disqualify present counsel for the parties as witnesses who ought to testify at trial under N.Y. Judiciary Law, Code of Professional Responsibility, Disciplinary Rule 5–102(A); and (3) to dismiss plaintiff's claims

of sex and national origin discrimination asserted under both Title VII and § 1981. For the reasons that follow, defendants' motion to strike the jury demand and to bifurcate the trial are denied, the back pay period is limited to the date when plaintiff rejected defendant's reinstatement offer, the motion to disqualify is denied, the national origin claim is limited to Title VII, and the sex discrimination claims are dismissed.

In moving to strike plaintiff's jury demand, defendants have viewed the complaint as seeking essentially equitable relief (reinstatement and back pay) under both Title VII and § 1981. Further, defendants have relegated the claim for damages for mental anguish, embarrassment and humiliation to State tort law, on the ground that neither of the federal statutes involved permits recovery of such damages. Contending that plaintiff added this latter claim as an "afterthought" without factual support, merely to justify demanding a jury trial, defendants argue that established precedent denying a jury trial in "equitable" Title VII and § 1981 proceedings should not be evaded so transparently and that the action must be tried to the court.

■ Although some courts have accepted such arguments in denying a request for a jury trial, e.g., *Lynch v. Pan American World Airways*, 475 F.2d 764, 765 (5th Cir. 1973) (unsupported allegations for compensatory damages insufficient to sustain jury demand), see also *Seymore v. Reader's Digest Ass'n, Inc.*, 493 F.Supp. 257, 266–67 (S.D.N.Y.1980), careful consideration of the complaint and relevant authorities demonstrates that plaintiff is entitled to a jury trial in this case.

■ The basic flaw in defendants' argument is that their reading of the complaint needlessly divorces the claim for psychological damages from federal law. While such damages may be unavailable in a Title VII proceeding, see, e.g., *Whitney v. Greater New York Corporation of Seventh-Day Adventists*, 401 F.Supp. 1363, 1370 (S.D.N.Y. 1975), controlling and persuasive precedent indicates that they are a proper element of recovery in an action under § 1981, and remain such when a plaintiff joins claims under Title VII with the claims under § 1981.

The Supreme Court in *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), held "that § 1981 affords a federal remedy against discrimination in private employment on the basis of race." 421 U.S. at 459–60, 95 S.Ct. at 1719–20. And the Court declared that whoever "establishes a cause of action under § 1981 is entitled to both legal and equitable relief, including compensatory and, under certain circumstances, punitive damages." *Id.* 421 U.S. at 460, 95 S.Ct. at 1720. Furthermore, the Court emphasized that "the remedies available under Title VII and under § 1981, although related and although directed to most of the same ends, are separate, distinct, and independent." 421 U.S. at 461, 95 S.Ct. at 1720. *Accord, Claiborne v. Illinois Central R.R.*, 583 F.2d 143, 153–54 (5th Cir. 1978) (award of punitive damages under § 1981 upheld although joined with Title VII claims).

■ Second, the nature of the relief available in actions brought under § 1981 clearly encompasses damages to compensate for the emotional injuries flowing from discrimination. In *Sullivan v. Little Hunting Park*, 396 U.S. 229, 238–40, 90 S.Ct. 400, 405–06, 24 L.Ed.2d 386 (1969), the Supreme Court held that money damages may be recovered for violations of the Civil Rights Act of 1866 and 1871, 42 U.S.C. §§ 1981 and 1982. Building on this decision, the court of appeals in *McCrary v. Runyon*, 515 F.2d 1082, 1089 (5th Cir. 1975) (*en banc*), aff'd, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), upheld the trial court's award of damages for the embarrassment, humiliation and mental anguish that the plaintiffs had suffered as a result of being denied admission to private schools on account of their race. The court recognized that one purpose of the Congress that enacted § 1981 was "to remove the stigma which accompanied the disability under which the [former slaves] had labored," 515 F.2d at 1089, by means of the law's "plain command

... that those formerly enslaved henceforth shall be treated as having all the right and dignity of other people dwelling with them in a land of freedom." *Id.* Thus, the court of appeals ruled that

"a denial of those statutory rights is treatment of the victim as being subject to those earlier disabilities. It is an affront, of which embarrassment and humiliation are natural consequences. If the statute is to be enforced fairly, if injuries suffered directly because of its violation are to be fairly compensated, damages for embarrassment and humiliation must be recoverable in a case such as this." *Id.*

The Supreme Court's later affirmance noted without questioning, only that the award had been made. 427 U.S. at 166 n. 4, 96 S.Ct. at 2592 n. 4. See *Seaton v. Sky Realty Co.*, 491 F.2d 634, 637–38 (7th Cir. 1974) (action under § 1982 and 42 U.S.C. 3604; damages for humiliation based upon discriminatory refusal to negotiate sale of realty).[1]

Against this background, several cases in which the Supreme Court has considered the jury trial question clearly establish plaintiff's right to a jury trial in this case, at least on some issues. In *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1973), the Court held that the Seventh Amendment right to a jury trial in federal court actions at law also applies

"to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." 415 U.S. at 194, 94 S.Ct. at 1008.

While the Court cautioned that not every "award of monetary relief must necessarily be 'legal' relief," *id.*, 415 U.S. at 196, 94 S.Ct. at 1009, it readily concluded that the statutory discrimination claim before it, seeking compensatory damages under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3612, was not equitable. Ground-

ed in a prohibition of racial discrimination, the statutory claim could be likened to various common law tort actions, *id.*, 415 U.S. at 195 & n. 10, 94 S.Ct. at 1009 & n. 10. "More important," the nature of the compensatory relief sought was "the traditional form of relief offered in the courts of law," *viz.*, "actual and punitive damages." 415 U.S. at 196, 94 S.Ct. at 1009. Such damages, of course, are precisely the relief the Court sanctioned for §§ 1981 and 1982 claims in *Sullivan v. Little Hunting Park, supra.*

■ Defendants have adduced nothing to establish that plaintiff did not suffer emotional harm as alleged, and their motion for summary judgment is therefore inadequate to remove this issue from the complaint. See *Adickes v. S. H. Kress Co.*, 398 U.S. 144, 159–61, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970). Plaintiff, accordingly, is entitled to have a jury determine the fact issues relating to his claim of employment discrimination under § 1981. Although some of these fact issues also pertain to plaintiff's claims under Title VII, the decisions in *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), and *Dairy Queen Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), require that any such issues be submitted to the jury prior to final court determination of equitable relief under Title VII.

■ One further matter requires consideration in defining the issues to be submitted to the jury. This is whether plaintiff has presented a "legal" or an "equitable" claim by seeking an award of backpay. Depending upon the true nature of this claim, the jury may or may not be required to consider issues of relief besides the damages for plaintiff's emotional harm. Although the parties themselves have not directly addressed this question, it deserves discussion because a determination to deny plaintiff a jury trial will have an obvious

---

1. Under *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), it may be doubted whether plaintiff could recover damages for emotional distress without proving actual injury. This requirement, however, would not render his claim frivolous at this pretrial stage, and defendants have not demonstrated that he did not suffer injury as alleged.

impact upon defendants' need for some of the other relief sought on this motion.

Resolution of this matter is complicated from the outset because plaintiff has elected to proceed under both Title VII and § 1981. As a matter of statutory construction, it seems settled that Congress intended Title VII's remedies, including awards of back pay, to be fashioned on the equity side of the district courts. See *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415–21, 95 S.Ct. 2362, 2370–73, 45 L.Ed.2d 280 (1975). The courts of appeals considering the issue have held almost uniformly that a claim for back pay under Title VII carries with it no right to a jury trial. *E.g., Grayson v. Wickes Corp.*, 607 F.2d 1194, 1196 (7th Cir. 1979) (joining the fourth, fifth, sixth and ninth circuits); *Walton v. Eaton Corp.*, 563 F.2d 66, 69 n.1 (3d Cir. 1977) (*en banc*).[2]

Courts considering demands for jury trials on back pay claims under § 1981 understandably have turned to the reasoning used to deny a jury trial for back pay claims under Title VII. Moreover, as one judge of this Court commented, it "makes little sense to label the same type of relief for the same discriminatory acts 'legal' when it is afforded under § 1981 instead of Title VII." *Flores v. Local 25, International Brotherhood of Electrical Workers, AFL–CIO*, 407 F.Supp. 218, 220 (E.D.N.Y. 1976). Nevertheless, closer examination of the question is called for by the recent appeals court decision in *Setser v. Novack Investment Co.*, 638 F.2d 1137 (8th Cir. 1981), holding that back pay under § 1981 was "more appropriately characterized as a compensatory, legal damage" than as "equitable" relief.

Undoubtedly, the obvious close parallels between Title VII and § 1981 have confused consideration of the jury trial issue under the latter statute. The *Albemarle* decision clearly linked reinstatement and back pay as discretionary, equitable remedies. But unlike Title VII, no Congressional intent to entrust relief to judicial discretion can be discerned in the enactment of § 1981. The holding in *Johnson v. REA, supra*, that § 1981 permits both legal and equitable relief, warns against automatically characterizing back pay as equitable relief. And holding that the award of back pay is equitable because incidental to reinstatement, relief which requires an injunction, "appears," as the *Setser* court observed, "to be the theoretical equivalent of the repudiated 'clean-up doctrine' in equity. See *Dairy Queen v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970)." 638 F.2d at 1141.

Courts considering the nature of a back pay claim apart from the remedy of reinstatement have concluded nonetheless that it is equitable because it is restitutionary.[3]

**2.** Both before and after *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), however, the Supreme Court has observed that whether a jury trial is available under Title VII as a matter of statutory or constitutional right has not been conclusively determined. *Lorillard v. Pons*, 434 U.S. 575, 583–85, 98 S.Ct. 866, 871–72, 55 L.Ed.2d 40 (1977); *Curtis v. Loether*, 415 U.S. 189, 195–96, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1973). In *Albemarle* the Court stated that as a general rule

"given a finding of unlawful discrimination, back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making a person whole for injuries suffered through part discrimination."

422 U.S. at 421, 95 S.Ct. at 2373. Accordingly, the Court held that the absence of bad faith on the defendant's part did not permit a court to deny back pay, while laches in asserting the claim might. Interestingly, Justice Rehnquist noted that while the Court's decision thus narrowed the courts' discretion to deny an award of back pay, sufficiently "substantial discretion" and "broad latitude" were retained to defuse the "critical" question of whether either party could demand a jury trial under the Seventh Amendment. 422 U.S. at 442, 443, 95 S.Ct. at 2384, 2385 (concurring opinion).

**3.** The Supreme Court itself has referred to the Title VII system of remedies as restitutionary. In *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), for example, the Court found in the legislative history to the 1972 amendments to 42 U.S.C. § 2000e–5(g)

"emphatic confirmation that federal courts are empowered to fashion such relief as the particular circumstances of a case may require to effect restitution, making whole in-

See 638 F.2d at 1141 (citing cases). This analysis is flawed for two reasons. First, many instances of discrimination in employment do not fit the traditional concepts of restitution that permit recovery of a benefit conferred by the injured party on the wrongdoer, or, more generally, prevent unjust enrichment of one person at the expense of another. See 638 F.2d at 1142.

Second, the concept of restitution is not limited to relief in equity but clearly pervades traditional legal remedies as well, such as *"quantum meruit"* among the common counts. See Restatement of Restitution, Introductory Note, at 4 (1937); 1 G. Palmer, Law of Restitution, § 1.1 at 3–4 (1978). Thus whether or not back pay can properly be considered restitutionary, nothing about the present case implicates any need to apply equitable principles. There has been no showing, for example, that the traditional legal remedy, described below, is in any manner inadequate.

The gist of a demand for "back pay" in a § 1981 action brought by a discharged or suspended employee, is breach of an employment contract by wrongful discharge. See, *e.g.*, C. Sullivan, M. Zimmer, & R. Richards, Federal Statutory Law of Employment of Discrimination, § 9.9(c) at 581 (1980). *Accord, Young v. International Telephone & Telegraph Co.*, 438 F.2d 757 (3d Cir. 1971) (action under § 1981 to recover lost wages and to enjoin breach of contract). *Cf. Ochoa v. American Oil Co.*, 338 F.Supp. 914, 918–19 (S.D.Tex.1972) (discriminatory discharge challenged under Title VII likened to common law action for breach of contract by wrongful discharge; jury trial denied because of fifth circuit precedent). " 'The rule of damages in such cases is what would have come to the plaintiff under the contract had it continued, less whatever the plaintiff might earn by the exercise of reasonable and proper diligence on his part.' " *Pierce v. Tennessee Coal, Iron & Railroad Co.*, 173 U.S. 1, 15, 19 S.Ct. 335, 340, 43 L.Ed. 591 (1899) (citation omitted). See 5 Corbin on Contracts § 1095 (1951).

Under familiar principles, therefore, plaintiff is entitled to a jury trial on issues pertaining to his "legal" claims for compensatory damages for emotional harm and for back pay under § 1981, even though the latter claim must also be tried to the court under Title VII.

The defendants' next requests for relief all relate to their attempt to limit plaintiff's back pay recovery to the period between the February 1980 suspension and the date they made, and plaintiff rejected, an offer of unconditional reinstatement without prejudice to his claim for back pay. In Title VII, Congress specifically provided that "[i]nterim earnings or amounts earnable with reasonable diligence by the person . . . discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e–5(g). The measure of damages for the back pay claim under § 1981, discussed *supra*, is identical.

Accordingly, defendants have moved to terminate plaintiff's claim for back pay as of February 24, 1981 or March 2, 1981, dates on which they claim to have offered to reinstate plaintiff to his former position, unconditionally without prejudice to his present attempt to secure back pay for any prior period, and so limit a liability that could otherwise run until trial.[4] Alterna-

---

sofar as possible the victims of racial discrimination."

424 U.S. at 764, 96 S.Ct. at 1264. Again, in support of its holding that a person who was discriminatorily refused employment could receive retroactive seniority, the Court observed that

"at least in regard to 'benefit'-type seniority, . . . any general bar to the award of retroactive seniority for victims of illegal hiring discrimination serves to undermine the mutually reinforcing effect of the dual purposes of

Title VII; it reduces the restitution required of an employer at such time as he is called upon to account for his discriminatory actions perpetrated in violation of the law." 424 U.S. at 767 n.27, 96 S.Ct. at 1265 n.27.

4. In practical terms, there does not seem to be any difference between terminating a back pay period as of a certain date, and holding that the amounts a discharged employee could earn from the former employer under an offer of reinstatement are "earnable with reasonable diligence" and therefore to be applied to reduce

tively, defendants have moved for an order disqualifying present counsel for both parties on the ground that they ought to testify about the alleged offers and plaintiff's refusal. In addition, defendants have sought an order severing trial of the liability issues from those relating to damages, on the ground that defendants will be prejudiced before the jury, since the evidence they intend to introduce to reduce or mitigate plaintiff's back pay claim unavoidably will expose the parties' unsuccessful settlement negotiations.

Neither side disputes that on February 24, 1981, the parties and their present attorneys met to discuss settlement of this lawsuit. There is also no question that at this meeting the defendants, through present counsel, offered to reinstate plaintiff to the terms and conditions of his former position, or that on March 2, 1981, defendants' counsel wrote to plaintiff's counsel purporting to summarize the February 24 discussions and "reiterate that the offer of reinstatement of Mr. Thomas to his former terms and conditions of employment was without conditions and did not require him to waive his claims for back pay." Exh. C to Affid. of Frank Romano, Esq., dated Dec. 30, 1981. Furthermore, neither plaintiff nor his counsel has denied that the initial offer was rejected solely because it did not compensate plaintiff for pay and other benefits (holidays and sick days) he lost during his suspension. There is considerable question, however, whether the offer "reiterated" by defendants' counsel's March 2 letter was ever communicated to the plaintiff himself.[5]

The circumstances under which the February 24 offer was made also are in dispute but, as will become clear, this fact issue is not material. Plaintiff's counsel clearly considered that all the discussions between the parties that day were being held "without prejudice." Defendant's counsel now claims that the offer was made to plaintiff independent of that day's settlement discussions, which assertedly had reached an impasse. Disputing this latter contention, plaintiff's counsel also contends that the "without prejudice" understanding of the parties prevents the reinstatement offer from being used to limit his client's back pay award.

The foregoing facts raise two main questions which must be resolved before defendant's motions can be decided. First, does Rule 408, F.R.Evid., preclude defendants from submitting evidence as to the reinstatement offers on the motion for summary judgment? See Rule 56(e), F.R.Civ.P. If evidence of the offers is excluded, defendants' various motions relating to the offers must be denied. But if evidence of the offers is admissible, the legal effect upon plaintiff's back pay claim must then be addressed, the second issue.

■ In pertinent part, Rule 408 provides as follows:

> "Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose . . . ."

Evidence of the reinstatement offers and of plaintiff's rejection is admissible for the following reasons. First, there is no genuine issue that the reinstatement offers were not made to compromise the claim for back

---

the back pay otherwise recoverable. In this case, the "back pay" plaintiff seeks to recover is the same as the wages offered to him under the reinstatement offer.

5. Because the offer and rejection of February 24, 1981, were sufficient to terminate plaintiff's back pay claim on that date, the fact issue whether plaintiff himself ever saw the "reiterated" letter offer of March 2, 1981 is immaterial.

pay, which puts the proffered evidence outside the scope of the first sentence of the Rule. Although defendants made their initial offer at the same meeting at which they discussed settlement of the entire case with plaintiff and his attorney, the offer could not reasonably be viewed as one to settle the back pay claim, since plaintiff's acceptance of its terms was without prejudice to his demand for back pay. Thus, the fact issue whether or not settlement negotiations had reached an impasse is not material.

For this same reason, evidence as to the offer and its rejection falls within the admissible scope of Rule 408's third sentence, and does not suffer the exclusionary effect of the Rule's second sentence. Regardless of when the offer was made, there is no question that legally it was unrelated to the discussions about settling the lawsuit including the back pay claim, although plaintiff's counsel may not have realized it.

Plaintiff's counsel urges that all the discussions on February 24 were "without prejudice." But to deny legal effect to an unconditional offer of reinstatement and preclude a defendant-employer from attempting to reduce a potential back pay award by an amount "earnable with reasonable diligence" from itself, because counsel for the offeree plaintiff insisted that all the discussions were "without prejudice," would grant the plaintiff too much control over the litigation, and subject employers to unnecessarily burdensome claims for back pay. In providing that a Title VII back pay award "shall be reduced by amounts earnable with reasonable diligence," Congress undoubtedly sought to achieve two desirable economic goals, to prevent a "double recovery" by a discriminatee of both back pay and income from employment the plaintiff would otherwise not have obtained, and, with respect to discriminatees who did not seek other jobs, to discourage unjustified idleness and thus minimize the consequent detriment to the defendant and the economy. See C. Sullivan, M. Zimmer & R. Richardson, Federal Statutory Law of Employment Discrimination, *supra*, § 9.1(d)(4) at 539. Significantly, Congress did not expressly exclude the alleged discriminating employer from the class of persons from whom a plaintiff might reasonably be required to seek employment.

■ Even if the evidence as to the offers and rejection could be considered within Rule 408, it would be admissible under the Rule's last sentence because "offered for another purpose" than the one proscribed by Rule 408. Defendant is not seeking to use its offer and plaintiff's rejection of it as an admission by either party as to the "invalidity" of the back pay claim, or its "amount," which is the chief evidentiary purpose on which Rule 408 focuses. See generally, 2 J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 408[01]–[02] (1981). Defendant's purpose is to show that back pay otherwise recoverable after the date of its offer should not be allowed because the loss of back pay during that period is not attributable to defendant's discrimination. Accordingly, the evidence as to the reinstatement offers is ruled admissible and not barred by Rule 408. Cf. *U.S. Equal Employment Opportunity Commission v. Air Line Pilots Association, International*, 489 F.Supp. 1003, 1019 & n.8 (D.Minn.1980) (Devitt, Ch. J.) (evidence from settlement negotiations admissible on issue of allocation of damages); *Iberian Tankers v. Gates Construction Corp.*, 388 F.Supp. 1190 (S.D. N.Y.1975) (pre-F.R.Evid. case; admitting evidence of settlement negotiations to determine propriety of awarding prejudgment interest in court's discretion).

There remains for consideration whether or not the reinstatement offer ended plaintiff's back pay claim when plaintiff rejected it, as defendants argue. As will become clear, the general rule is that the effect of a defendant's offer depends upon the circumstances in each suit. In the present case, the circumstances are such that as a matter of law defendant's liability for back pay, if any, ended with the plaintiff's rejection of the reinstatement offer. Plaintiff could not reasonably refuse this offer solely because it did not include provision for back pay potentially accruing to plaintiff up to that point.

In B. Schlei & P. Grossman, Employment Discrimination Law 1240 (1976), the authors declare that in an individual's employment discrimination suit under Title VII, "the termination date of back-pay liability is ordinarily the date of an offer of employment, reinstatement, or promotion, whether pursuant to a court decree or voluntarily" (footnote omitted). Without extensive analysis, some courts have adopted this view. *E.g., Stallings v. Container Corp. of America*, 75 F.R.D. 511, 522–23 (D.Del.1977) (promotion refused); *Blakely v. Chrysler Corp.*, 407 F.Supp. 1227, 1229–30, 1231 (E.D. Mo.1975), *rev'd on other grounds*, 561 F.2d 1282, 1283 (8th Cir. 1976) (back pay award through date plaintiff rejected reinstatement offer). See also *Cofield v. Goldman, Sachs & Co.*, 364 F.Supp. 1372 (S.D.N.Y. 1973) (right to receive back pay arising from refusal to hire terminated upon receipt of unconditional job offer from the employer). The rationale of these decisions is that the employer's originally unlawful discrimination ended when an unconditional offer was made to the plaintiff for the very thing that he was first denied, and therefore any claim for amounts of back pay accruing thereafter cannot fairly be attributed to the defendant.[6]

Other circuit court decisions, however, seem to support plaintiff's position that the reinstatement offer was ineffective because it did not include back pay. See *Comacho v. Colorado Electronic Technical College, Inc.*, 590 F.2d 887 (10th Cir. 1979) (*per curiam*); see also *Jurinko v. Edward L. Wiegand Co.*, 477 F.2d 1038 (3d Cir. 1973), *vacated* and *remanded*, 414 U.S. 970, 94 S.Ct. 293, 38 L.Ed.2d 214 (1974). Nevertheless, close examination of these cases, and two others, *Equal Employment Opportunity Commission v. Ford Motor Co.*, 645 F.2d 183 (4th Cir.), *pet. for cert. granted*, —— U.S. ——, 102 S.Ct. 565, 70 L.Ed.2d 473 (1981), and *Claiborne v. Illinois Central R.R.*, 583 F.2d 143 (5th Cir. 1978), suggests that full retroactive seniority is the critical factor and that a reinstatement offer including that, but not back pay, can terminate a back pay claim.

Thus, in *Jurinko, supra*, two female plaintiffs, acting on the advice of an E.E.O.C. representative, refused an offer of employment made before the start of their lawsuit, some three years after they first presented their claim to the E.E.O.C. that defendant had refused to hire them in 1966 because of their sex. The Court of Appeals affirmed the trial court's finding of liability, but reversed on the remedy because the trial court had declined to award back pay after February 1969 when plaintiffs rejected the defendant's job offer. In the circuit court's view, plaintiffs were entitled to seniority and back pay dating from the time of

> "the discriminatory employment practice up to the time they are actually reinstated. Only in this way will the present effects of the past discrimination be eliminated." 477 F.2d at 1046.

The court reasoned that "[e]ven though the discrimination ceased when the offers were made," and acceptance of the job offers would have mitigated damages, "plaintiffs did not act unreasonably in refusing the offers" since they "did not rectify the effects of [defendant's] past discrimination." 477 F.2d at 1047.

Interpreted broadly, the *Jurinko* court's statements indicate that a purported victim of discrimination almost always will act reasonably in rejecting an employment or reinstatement offer that does not include

---

**6.** This view of the Title VII back pay provision is consistent with the approach that courts have taken with respect to back pay claims asserted under § 10(c) of the National Labor Relations Act, 29 U.S.C. § 160(c). In *Kenston Trucking Co. v. N.L.R.B.*, 544 F.2d 1165, 1167 (2d Cir. 1976), the court of appeals held the employer was liable only for the back pay it owed to a wrongly discharged employee at the time he rejected the employer's unconditional offer of reinstatement. Accord, *N.L.R.B. v.*

*Izzi*, 395 F.2d 241, 244–45 (1st Cir. 1968) (back pay period for wrongfully discharged employees ended at time employer made unequivocal reinstatement offer, despite adverse economic consequences to former employees if they accepted). This interpretation of the NLRA back pay provision is significant, because Title VII's "back pay provision was expressly modeled" upon it. *Albemarle Paper Co. v. Moody, supra*, 422 U.S. at 419, 95 S.Ct. at 2372.

both the full reinstatement and back pay relief demanded in the victim's lawsuit. The tenth circuit seems to have so held in *Comacho v. Colorado Electronic Technical College, supra,* 590 F.2d at 889, in affirming the trial court's decision to award 56 months' back pay to the plaintiff instead of the 18 months' award the defendants had calculated based upon their unconditional offer of reinstatement. In the circuit court's view, holding that such a reinstatement offer without back pay could provide a cutoff point for calculating a back pay award would "circumvent" the "make whole" remedial policy of Title VII and the trial court's discretion as to the appropriate remedy.

Although cited by the fourth circuit in *E.E.O.C. v. Ford Motor Co., supra,* as consistent with its holding that the reinstatement offer before it was inadequate to mitigate damages, the *Comacho* decision seems at odds with what appears to be the fundamental reason for the decision in *E.E.O.C. v. Ford Motor Co.* and *Claiborne v. Illinois Central R.R., supra,* as well as *Jurinko, viz.,* that the insufficiency of reinstatement offers to mitigate the amount of back pay in those cases depended particularly upon the inadequate seniority terms offered. When a reinstatement offer is made, seniority, and not back pay, is what makes " 'the employees whole, and thus restor[es] the economic status quo that would have obtained but for the company's [alleged] wrongful act.' " *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 769, 96 S.Ct. 1251, 1266, 47 L.Ed.2d 444 (1976), quoting *N.L.R.B. v. Rutter-Rex Mfg. Co.,* 396 U.S. 258, 263, 90 S.Ct. 417, 420, 24 L.Ed.2d 405 (1969). At least where reinstatement and back pay are sought together, it can be said that an offer to reinstate an alleged discriminatee to his or her rightful place, with seniority, effectively ends any claim that the effects of any past discrimination will continue and should be compensated with an award of further back pay. In such circumstances, the amounts to be earned under the offer must be considered amounts earnable with reasonable diligence. What is left for litigation is precisely the discrete question of liability for back pay. To hold that back pay must be included, too, is to require, in effect, the full settlement of the lawsuit, which would be inconsistent with the "earnable with reasonable diligence" provision of 42 U.S.C. § 2000e–5(g).

As suggested previously, a close reading of the cases supports the view that back pay should not be included. First, the *Jurinko* decision that seemed to support such a view is itself no longer authoritative precedent. On certiorari, the Supreme Court vacated the third circuit's judgment and remanded the case for reconsideration in light of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Edward L. Wiegand Co. v. Jurinko,* 414 U.S. 970, 94 S.Ct. 293, 38 L.Ed.2d 214 (1973). Furthermore, as the circuit court later explained, 528 F.2d 1214 (3d Cir. 1975), the panel that first considered the case on remand from the Supreme Court, determined that liability had been established under the *McDonnell Douglas* case and that relief was the only issue for the trial court to consider, (as was true with the circuit court's original decision). The initial remand determination, however, was vacated by a subsequent decision of the panel to remand the entire case to the trial court. By mistake the trial court followed the initial, vacated remand order. Although this mistake by itself required a further remand, the court of appeals also vacated the trial court's award of back pay and seniority, remanding the issue of relief for reconsideration in light of *Albemarle Paper Co. v. Moody, supra,* then recently decided. The court of appeals noted that inconsistently with *Albemarle Paper*'s emphasis on equitable discretion in fashioning Title VII remedies, the trial court had construed the initial *Jurinko* decision, (the appellate court's last word on the issue of remedies), as effectively "depriv[ing] it of equitable discretion to consider and determine on remand how justice could best be achieved in disposing of the claim for back pay in the years after 1969." 528 F.2d at 1216.

The third circuit's explicit retreat from its prior holding on how the reinstatement

offer was to be evaluated at least leaves open the possibility that the absence of back pay in a reinstatement offer might not be fatal. It is certain that the subsequent history of the *Jurinko* case helped persuade the fifth circuit in *Claiborne v. Illinois Central R.R., supra,* to disapprove the trial court's *per se* position, based upon the first *Jurinko* decision, that an offer of employment could not terminate an employer's liability for back pay if it did not also include back pay and seniority. See 583 F.2d at 153 & n.10. This is clearly evinced by its direction that

> "In determining whether the right to relief extends beyond the date of an offer of reinstatement, the trial court must consider the circumstances under which the offer was made or rejected, including the terms of the offer and the reasons for refusal. Such reasons as the trial court gave for a per se rejection of the railroad's position for example, the difficulty elderly plaintiffs had in finding substitute work and the disadvantage to them of returning to the railroad *without retroactive seniority,* would more than justify a particular employee in refusing an offer of reinstatement." 583 F.2d at 153 (emphasis added).

Thus, as on the facts in *Jurinko,* the absence of an allowance for retroactive seniority occurring between the act of discrimination and the date of the offer left the offer potentially insufficient. On the other hand, if full reinstatement with retroactive seniority had been made, it would be difficult to discern why the failure to make an award of back pay for the discrete period up to the date of the reinstatement offer should justify a refusal to accept the offer. In neither case would plaintiff have been disadvantaged by being forced to accept such an offer.

That seniority is the most critical element in an employment offer intended to limit back pay liability is suggested by *E.E.O.C. v. Ford Motor Co., supra.* In that case, the E.E.O.C. proved that Ford had discriminated against three women in 1971 and eleven in 1973 (including one of the three) in not

selecting them or any other women but only men to be "picker-packers" in an automotive parts warehouse. In a subsequent court action, the trial court determined that if the women had been hired in 1971 they would have continued working until the time of trial in 1977, and accordingly awarded them back pay for the entire six years. Ford contended that its back pay liability ended at at least two earlier points: when the women began work for General Motors at substantially equivalent wages, which employment lasted for more than a year, and when Ford offered permanent warehouse jobs to two of the women while they were working for GM. Because Ford's offer was for "mere beginning employment" without including retroactive seniority the court ruled that the women's right to back pay did not end on the date the offers were rejected.

Purporting to align itself with the *Jurinko, Claiborne* and *Comacho* courts, the fourth circuit concluded that the offer could not affect Ford's back pay liability. But the court's reasoning indicated that the lack of back pay was not significant. The court explained that without provision for seniority from the date of the original refusal to hire, the offer was "incomplete and unacceptable" and put the plaintiffs to "an intolerable choice" of foregoing further back pay benefits, or losing accrued seniority rights at GM without a compensating offer at Ford. 645 F.2d at 192. Plainly, however, no such "intolerable choice" is presented if the only thing missing from an offer is back pay.

■ With the foregoing discussion in mind, we turn to the issues in this case. Plaintiff's attorney declared at plaintiff's deposition that he had rejected defendants' offer of reinstatement because it did not compensate plaintiff for the time lost during his suspension, including holiday and sick pay. Exh. D, Romano Affid. of Dec. 30, 1981, Dep. of Michael Thomas at 171. Defendants offered to reinstate plaintiff to his former terms and conditions of employment without prejudice to his back pay claim. Under the principle reached in this

decision, however, defendant was not required to compensate plaintiff for his past economic losses, liability for which was in dispute, in order to end its liability for back pay by an offer that in all other respects put all claims of discrimination to rest. Accordingly, plaintiff's claim for back pay is limited under both Title VII and § 1981 to amounts accruing between the date of his suspension and the date he rejected defendants' offer.[7]

Lastly, defendants have moved to dismiss the claims of sex and national origin discrimination asserted in plaintiff's complaint under both Title VII and § 1981. Plaintiff has conceded that he may not now present a sex discrimination claim under Title VII, having failed to charge this before the EEOC. He has also acknowledged that his § 1981 claims are limited to discrimination based upon race and color. The remaining issue, therefore, is whether plaintiff's charge before the EEOC sufficiently notified defendants that plaintiff was complaining of discrimination based upon his national origin.

 In support of their motion to dismiss, defendants point out that plaintiff failed to check the box for national origin discrimination on the EEOC charge form. It is undisputed, however, that in the text of the EEOC form, plaintiff asserted that he had been "discriminated against on the basis of my place of origin." It is well settled that a plaintiff's complaint is limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination. *E.E.O.C. v. Bailey Co.*, 563 F.2d 439, 446 (6th Cir. 1977), *cert. denied*, 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 506 (1978). See *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). Because the charge of national origin discrimination appeared in the form

plaintiff filed with the EEOC, defendants cannot reasonably argue that the present complaint impermissibly extends the scope of the EEOC charge. Defendants' further motion to dismiss the claim of national origin discrimination as insufficiently pleaded is also denied.

Accordingly, defendants' motions to strike plaintiff's jury demand and to dismiss the claim of discrimination based upon national origin are denied, and defendants' motions to dismiss the claim of discrimination based on sex, and to end the period of plaintiff's back pay recovery on the day it offered reinstatement are granted.

SO ORDERED.

---

7. Because plaintiff also has sought reinstatement to his former position in this litigation, there is no genuine issue about plaintiff's willingness to work for an employer whom he claims subjected him to unlawful discrimination. In other circumstances, the possible humiliation or undesirable personal relations that might be involved if a discharged or suspended employee returned to work would present an issue of fact as to whether the rejection of a reinstatement offer was reasonable. See 5 Corbin on Contracts, § 1043 at 275 (1951).

Defendants' other requests for relief, to disqualify counsel, and to sever trial of liability and damages issues, have been rendered moot by the grant of summary judgment limiting plaintiff's back pay period to the time between his suspension and the rejection of the offer.